| | |
|---|---|
| Y.Y.,<br><br>      Plaintiff,<br><br>v.<br><br>KELLY MAYER-REGALBUTO, et al.,<br><br>      Defendants. | :  UNITED STATES DISTRICT<br>:  COURT FOR THE DISTRICT OF<br>:  NEW JERSEY<br>:<br>:<br>:<br>:  CIVIL CASE NO.: 2:24-CV-08401-<br>:  CCC-JBC<br>:<br>:<br>:<br>:  MOTION DAY: January 6, 2025<br>: |

## BRIEF IN SUPPORT OF DEFENDANTS KELLY MAYER-REGALBUTO, PATRICIA AUFIERO, NICOLE ELMERA, AND NEW MILFORD BOARD OF EDUCATION'S MOTION TO DISMISS PURSUANT TO FED R. CIV. 12(b)(6)

FOGARTY & HARA, ESQS.
21-00 Route 208 South
Fair Lawn, New Jersey 07410
Telephone (201) 791-3340
Facsimile (201) 791-3432
vlapira@fogartyandhara.com
Attorneys for Defendants, Kelly Mayer-Regalbuto, Patricia Aufiero, Nicole Elmera, and the New Milford Board of Education

Vittorio S. LaPira
*Of Counsel and on the Brief*

Joseph M. Naeem
*On the Brief*

Oral Argument Requested

# TABLE OF CONTENTS

Table of Authorities ........................................................................................... iii

Preliminary Statement ...................................................................................... 1

Statement of Facts ............................................................................................ 1

Standard of Review .......................................................................................... 3

Legal Argument ............................................................................................... 3

I.    The Court must dismiss Count One against Mayer-Regalbuto............ 3

    A.    Plaintiff lacks standing because he has not alleged that Mayer-Regalbuto caused Plaintiff an injury that is fairly traceable to her conduct. ............................................ 4

    B.    Mayer-Regalbuto did not act under the color of law by transmitting a report to the DCPP because any person could have taken this action. ................................. 5

II.    The Court must dismiss Count Two against Mayer-Regalbuto and Aufiero because Plaintiff has not pled sufficient facts to plausibly allege the existence of a conspiracy motivated by racial or class-based animus........................................................ 7

III.    The Court must dismiss Counts Three and Four against the Board. ......................................................................................... 8

    A.    The Court must dismiss the Section 1986 claims in Counts Three and Four because Plaintiff has not pled a viable Section 1985(3) claim................................................ 9

    B.    Plaintiff has not pled sufficient facts to plausibly allege that the Board had policy or custom of favoring the ABA program over other education models requiring the Court to dismiss the Section 1983 claims against the Board. ............................................................................. 9

    C.    Count Four cannot proceed under a breach of contract theory because an IEP is not a contract. .............................12

IV. The Court must dismiss Count Four against Aufiero and Elmera. ........................................................................14

  A. Plaintiff has not alleged that Aufiero or Elmera were parties to a contract. ..........................................14

  B. The Court must dismiss the Section 1983 claim because Section 1983 cannot be used to remedy violations of the IDEA. ..................................................................15

  C. The Court must dismiss the Section 1986 claim. ................15

V. The Court must dismiss Count Seven against Mayer-Regalbuto and Count Eight against Mayer-Regalbuto and Aufiero. ....................................................................15

Conclusion.............................................................................................19

# TABLE OF AUTHORITIES

## CASES

*A.W. v. Jersey City Pub. Schs.*,
486 F.3d 791 (3d Cir. 2007) .................................................................. 15

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
526 U.S. 40 (1999) ............................................................................... 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................. 3

*Baloga v. Pittston Area Sch. Dist.*,
927 F.3d 742 (3d Cir. 2019) ................................................................ 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................... 3, 11

*DeAngelis v. Hill*,
847 A.2d 1261 (N.J. 2004) .................................................................. 17

*Doe v. Megless*,
654 F.3d 404 (3d Cir. 2012). ............................................................. 1, 2

*Edwards v. Lindenwold Police Dep't*,
No. 21-13076, 2022 WL 621064 (D.N.J. Mar. 3, 2022) ................................ 10

*Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*,
580 U.S. 386 (2017) ........................................................................... 13

*G.D. v. Kenny*,
15 A.3d 300 (N.J. 2011) ..................................................................... 17

*Gary v. Pa. Human Relations Comm'n*,
497 Fed. App'x 223 (3d Cir. 2012) ....................................................... 8

*Goldfarb v. Solimine*,
245 A.3d 570 (N.J. 2021) .................................................................... 12

*Jewell v. Ridley Township*,
497 F. App'x 182 (3d Cir. 2012) ......................................................... 10

*Lake v. Arnold*,
112 F.3d 682 (3d Cir. 1997) ............................................................................. 8

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......................................................................................... 4

*Mark v. Borough of Hatboro*,
51 F.3d 1137 (3d Cir. 1995) ............................................................................. 6

*McTernan v. City of York*,
564 F.3d 636 (3d Cir. 2009) ........................................................................... 10

*Monell v. Dep't of Soc. Servs. of City of New York*,
436 U.S. 658 (1978) ........................................................................................ 10

*Morton v. 4 Orchard Land Tr.*,
849 A.2d 164 (N.J. 2004) ................................................................................ 12

*Ms. K v. City of South Portland*,
407 F. Supp. 2d 290 (D. Me. 2006) ................................................................ 13

*N.N.J. ex rel. L.J. v. Sch. Bd. of Broward Cty.*,
927 F.3d 1203 (11th Cir. 2019) ...................................................................... 13

*Noble v. City of Camden*,
112 F. Supp. 3d 208 (D.N.J. 2015) ................................................................. 10

*Papasan v. Allain*,
478 U.S. 265 (1986) .......................................................................................... 3

*Pembaur v. City of Cincinnati*,
475 U.S. 469 (1986) ..........................................................................................11

*Sarwer v. Conde Nast Publ'ns, Inc.*,
654 N.Y.S.2d 768 (N.Y. App. Div. 1997) ...................................................... 18

*Shelton v. Restaurant.com, Inc.*,
70 A.3d 544 (2013) .......................................................................................... 12

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......................................................................................... 4

*United States v. Classic*,
313 U.S. 299 (1941) ............................................................................................ 6

*Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*,
502 F.3d 811 (9th Cir. 2007) ............................................................................ 12

*Weichert Co. Realtors v. Ryan*,
608 A.2d 280 (N.J. 1992) ................................................................................. 12

*West v. Atkins*,
487 U.S. 42 (1988) .............................................................................................. 6

## STATUTES

20 U.S.C. § 1412(a)(4) ................................................................................. 12, 15

42 U.S.C. § 1983 ...................................................................................... passim

42 U.S.C. § 1985 .................................................................................. 7, 8, 9, 15

42 U.S.C. § 1985(1) .............................................................................................. 7

42 U.S.C. § 1985(2) .............................................................................................. 8

42 U.S.C. § 1985(3) .............................................................................................. 8

42 U.S.C. § 1986 .................................................................................. 7, 8, 9, 15

N.J.S.A. 9:6-8.10 .................................................................................................. 7

## RULES

Fed. R. Civ. P. 10(a) ......................................................................................... 1, 2

Fed. R. Civ. P. 5.2(a) ............................................................................................ 1

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 3

## PRELIMINARY STATEMENT

In this case, Plaintiff seeks to recover money damages for damages he claims to have suffered many years ago while he was in elementary school. His claims fall into two categories. The first group, Counts One, Two, Seven, and Eight, stems from redress for an allegedly false report made by school staff to the Division of Child Protection and Permanency ("DCPP") that Plaintiff was the victim of child sexual abuse. The second group, Counts Three and Four, pertain to his transfer from one educational program to another, which he alleges violated his Individualized Educational Plan ("IEP") in place at the time. Neither category can proceed, and the Court must dismiss the Complaint as to the School Defendants.[1]

## STATEMENT OF FACTS

Plaintiff[2] was a student in the New Milford School District. (ECF No. 1 at ¶ 16). For the 2010-2011 school year, his IEP placed him in the District's Inner Bridge

---

[1] The "School Defendants" include Kelly Mayer-Regalbuto, Patricia Aufiero, Nicole Elmera, and the New Milford Board of Education.

[2] Y.Y.'s status as an adult raises the issue of whether Plaintiff can proceed pseudonymously using initials. Rule 10(a) requires parties to identify themselves in their pleadings, subject to the limitation in Rule 5.2(a) that the name of an individual known to be a minor must be substituted with the minor's initials. This requirement "illustrates the principle that judicial proceedings, civil as well as criminal, are to be conducted in public." *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2012). A plaintiff may proceed anonymously only in "exceptional cases," such as when he "sufficiently alleges . . . a reasonable fear of severe harm from litigating without a pseudonym" that outweighs the "public's strong interest in an open litigation process." *Id.* at 408-09. Embarrassment or economic harm is not enough. *Id.* at 408. In the absence of a

Crossing ("IBC") program. (ECF No. 1 at ¶ 21). According to Plaintiff, he "excelled" in the IBC program and "enjoyed his education and was thriving at exceptional levels." (ECF No. 1 at ¶ 27). For the next school year, Plaintiff was allegedly "unilaterally removed" from the IBC program by Aufiero and Elmera. (ECF No. 1 at ¶ 33). They placed him in Mayer-Regalbuto's classroom. (ECF No. 1 at ¶ 33). He alleges this violated his IEP. (ECF No. 1 at ¶ 33).

Plaintiff contends that Mayer-Regalbuto did not want Plaintiff in her classroom and that she told his parents she lacked the qualifications and the means to educate Plaintiff. (ECF No. 1 at ¶¶ 39-40). Nevertheless, he returned to Mayer-Regalbuto's classroom for the 2012-2013 school year, when he was seven years old. (ECF No. 1 at ¶¶ 43, 45). On February 1, 2013, Plaintiff contends that Mayer-Regalbuto fabricated a "false report" that she made to DCPP that Plaintiff touches his father and that doing so was "a secret" and Plaintiff got a "special surprise from it." (ECF No. 1 at ¶¶ 46-47). In her report, Mayer-Regalbuto also indicated: "(1) Plaintiff had been telling school staff that his 'bottom' was bothering him and was itchy, (2) Plaintiff had to be redirected in school several times for 'humping' objects, and (3) that Plaintiff indicated to school staff that he shares a bedroom with his mother,

---

motion from Plaintiff addressing the standards articulated by the Third Circuit in *Megless*, the Court cannot allow Plaintiff to ignore the requirement in Rule 10(a) that the Complaint "name all the parties."

father, and his mother's boyfriend." (ECF No. 1 at ¶ 49). Aufiero also reported that Plaintiff was the victim of "sexual abuse" and "sexual molestation," which he similarly alleges was false. (ECF No. 1 at ¶ 48).

## STANDARD OF REVIEW

To survive motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Instead, a plaintiff must allege sufficient factual matter to allow the Court to draw a reasonable inference of liability. *Twombly*, 550 U.S. at 556-57. Moreover, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The Court must only accept well-pled factual allegations as true. *Id.* at 283.

## LEGAL ARGUMENT

### I.    The Court must dismiss Count One against Mayer-Regalbuto.

Count One, filed against Mayer-Regalbuto only, seeks to recover under 42 U.S.C. § 1983 for what Plaintiff alleges was a fabricated report to DCPP "that Plaintiff touches his father (Y.W.) and that doing it is 'a secret' and that Plaintiff gets a 'special surprise' from it'" and that he was "a victim of 'sexual abuse' and 'sexual molestation . . . .'" (ECF No. 1 at ¶¶ 96-97). According to Plaintiff,

Mayer-Regalbuto acted "for the purpose of depriving Plaintiff of his familial rights to have an association with his father" and "injure[d] Plaintiff's right to obtain an education." (ECF No. 1 at ¶¶ 98, 101). The Court must dismiss this claim for two reasons. First, Plaintiff has not alleged he has suffered an injury from Mayer-Regalbuto's report to DCPP—depriving him of Article III standing. Second, assuming he has a standing, Plaintiff cannot proceed against Mayer-Regalbuto on these allegations under Section 1983 because she did not act under color of law.

## A. Plaintiff lacks standing because he has not alleged that Mayer-Regalbuto caused Plaintiff an injury that is fairly traceable to her conduct.

To establish standing under Article III, a plaintiff must show: (1) an injury-in-fact, (2) causation, and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). An injury-in-fact requires a plaintiff to show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized . . . ." *Id.* at 560. A concrete injury refers to one that actually exists; one that is real and not abstract. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). Plaintiff cannot meet this test.

Count One does not allege that Plaintiff has suffered any injury whatsoever caused by Mayer-Regalbuto, let alone one that is particularized and concrete. It alleges harm in the most conclusory fashion, alleging that it was Mayer-Regalbuto's

*intent* to deprive Plaintiff of his relationship with his father. (ECF No. 1 at ¶ 98).  He does not allege that Mayer-Regalbuto, or anyone else, deprived him of his familial right to a relationship with his father. This is insufficient to allege the injury-in-fact necessary for Article III standing.

The claim that Mayer-Regalbuto's actions deprived Plaintiff of the benefit of an education fares no better. While Plaintiff contends Mayer-Regalbuto "had a crusade to injure Plaintiff" due to her "animosity . . . that Plaintiff [was] in her classroom" and sought "to injure Plaintiff's right to obtain an education without justification," (ECF No. 1 at ¶¶ 100-01), he never alleges how he was harmed by Mayer-Regalbuto's actions, the nature of his injury, or any specific harm or adverse consequence that he suffered. He does not contend he was removed from her class, prevented from attending school, or anything similar.   Instead, the Complaint only alleges that Mayer-Regalbuto took action with the intent to harm him. Without alleging he actually suffered harm, he cannot have standing. Such a vague and conclusory allegation of injury is insufficient to establish standing.

**B.    Mayer-Regalbuto did not act under the color of law by transmitting a report to the DCPP because any person could have taken this action.**

Assuming Plaintiff has standing, he has not pled sufficient facts to state a claim. To plead a Section 1983 claim, a plaintiff must allege that: "(1) the conduct at issue was committed by a person acting under the color of state law,

and (2) the complained-of conduct deprived the plaintiff of rights secured under the Constitution or federal law." *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 n.6 (3d Cir. 2019). "[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West v. Atkins*, 487 U.S. 42, 50 (1988). The "under-color-of-state-law element of Section 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation marks and citations omitted). In other words, it is well settled that "an otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state. Rather, in order for the tortfeasor to be acting under color state law, his act must entail misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1150-51 (3d Cir. 1995) (alteration omitted) (internal quotation marks omitted) (quoting *United States v. Classic*, 313 U.S. 299, 326, 361 (1941)).

The only potential wrongdoing pled in Count One is Mayer-Regalbuto's allegedly fabricated report that Plaintiff was the victim of child abuse to DCPP. Plaintiff has not alleged she made the report under color of law—nor could he. Mayer-Regalbuto acted no differently than any other private citizen who has an

obligation to report child abuse pursuant to New Jersey law. Specifically, N.J.S.A. 9:6-8.10 requires "[a]ny person having reasonable cause" to believe that a child has been abused to report the same to DCPP. N.J.S.A. 9:6-8.10. She did not use—let alone abuse—any power she possessed by virtue of state law. Because of this, Plaintiff cannot plead a Section 1983 claim against Mayer-Regalbuto for the DCPP report. The Court must dismiss Count One.

## II.    The Court must dismiss Count Two against Mayer-Regalbuto and Aufiero because Plaintiff has not pled sufficient facts to plausibly allege the existence of a conspiracy motivated by racial or class-based animus.

Count Two alleges that Mayer-Regalbuto and Aufiero conspired to report that Plaintiff was the victim of child abuse to "deprive Plaintiff from his basic personal dignity," "depriv[e] Plaintiff of his familial rights to have an association with his parents," and "impair[] Plaintiff's right to receive an education." (ECF No. 1 at ¶¶ 104, 106-07, 110). He seeks relief under 42 U.S.C. §§ 1985 and 1986. The Court must dismiss these claims because Plaintiff has not pled a critical element: racial or class-based discriminatory animus.

While the Complaint does not articulate which subsection of Section 1985 he seeks relief under, presumably it is a Section 1985(3) claim because he does not allege Mayer-Regalbuto and Aufiero conspired to prevent an officer from accepting holding office or discharging the duties of that office, 42 U.S.C. § 1985(1), or conspired to deter, threaten, or intimidate a party or witness from attending court

or testifying in court or influence the verdict of a juror, 42 U.S.C. § 1985(2). In order to state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class-based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997).

Plaintiff has pled no facts regarding the second element. He has not alleged that Mayer-Regalbuto and Aufiero engaged in a conspiracy that was motivated by racial or class-based discriminatory animus. The Complaint is silent on Plaintiff's race, and it makes no attempt to allege he is the member of a class that faces discriminatory animus. This is fatal to his Section 1985(3) claim.

Without a valid Section 1985(3) claim, the Section 1986 claim also fails. *Gary v. Pa. Human Relations Comm'n*, 497 Fed. App'x 223, 227 (3d Cir. 2012) ("Absent a valid § 1985(3) claim, [the] claim under 42 U.S.C. § 1986 fails, as liability under that statute is predicated on actual knowledge of a § 1985 violation.") (citations omitted). Therefore, the Court must dismiss Count Two.

## III.    The Court must dismiss Counts Three and Four against the Board.

In Counts Three and Four, Plaintiff brings against the Board under Sections 1983 and 1986. For Count Three, he contends the School instructed Mayer-Regalbuto and

Aufiero to prioritize use of Applied Behavior Analysis ("ABA") due to financial incentives, thus depriving Plaintiff of the right to receive an education in the least restrictive environment after Mayer-Regalbuto and Aufiero removed Plaintiff from the IBC program. (ECF No. 1 at ¶¶ 114-18). Count Four alleges that Plaintiff's IEP was a contract, that the School Defendants breached that contract by removing him from the IBC program, and that the School Defendants thus deprived the Plaintiff of "the right to receive an education," violating the Individuals with Disabilities Education Act ("IDEA"). (ECF No. 1 at ¶¶ 119-28). Plaintiff has not plead sufficient facts for any of these claims.

### A. The Court must dismiss the Section 1986 claims in Counts Three and Four because Plaintiff has not pled a viable Section 1985(3) claim.

As discussed in Point II, a Section 1986 claim cannot exist without a valid claim under Section 1985. Since he has no underlying Section 1985 claim, Plaintiff cannot proceed against the Board under Section 1986. Therefore, the Court must dismiss Counts Three and Four against the Board to the extent they seek redress under Section 1986.

### B. Plaintiff has not pled sufficient facts to plausibly allege that the Board had policy or custom of favoring the ABA program over other education models requiring the Court to dismiss the Section 1983 claims against the Board.

A local government entity may be held liable under Section 1983 only "if the plaintiff identifies a municipal 'policy' or 'custom' that was the 'moving force'

behind the injury." *Jewell v. Ridley Township*, 497 F. App'x 182, 185 (3d Cir. 2012) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). A policy exists "when a decision-maker with final authority issues an official proclamation, policy, or edict." *Noble v. City of Camden*, 112 F. Supp. 3d 208, 221 (D.N.J. 2015) (internal quotations and citations omitted). "[A] custom may be established by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (internal quotations and citations omitted).

To allege the existence of a policy, practice, or custom, a plaintiff must plead more than mere conclusory allegations. "It is well-established that conclusory allegations as to the existence of a policy or practice is insufficient to provide a valid basis for municipal liability." *Edwards v. Lindenwold Police Dep't*, No. 21-13076, 2022 WL 621064, at *7 (D.N.J. Mar. 3, 2022). According to the Third Circuit, "To satisfy the pleading standard" a plaintiff "must identify a custom or policy, and specify what that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). Plaintiff has not done this for either Count Three or Four.

Plaintiff has only pled a conclusory recitation of the elements of a *Monell* claim in Count Three. He vaguely alleges that the Board implemented a policy of favoring the ABA model but fails to cite any policy, proclamation, or edict that declared ABA

was the only model to be used in the New Milford School District. He also does not cite a single instance of another student being moved from the IBC program to an ABA program, or being denied access to IBC in favor of ABA. Nor does Plaintiff specify the official or officials with "final policymaking authority" that gave the alleged "instruction." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482-83 (1986). Notably, the Complaint indicates that the IBC program, an alternative—and Plaintiff's preferred—model, continued to exist during the relevant time period, negating any inference of exclusivity or compulsion regarding use of the ABA program. (ECF No. 1 at ¶ 125). Thus, Plaintiff's Complaint fails to "nudge [Plaintiff's] claims across the line from conceivable to plausible" as required to survive a motion to dismiss. *Twombly*, 550 U.S. at 570. The Court must dismiss the Section 1983 claim in Count Three.

Count Four meets the same fate. In this Count, Plaintiff does not even attempt to allege that the Board had a policy, custom, or practice of removing students from the IBC program. It merely alleges that his IEP placed him in the IBC program and Aufiero and Elmera removed him from the IBC program "for merely disagreeing with the ABA." (ECF No. 1 at ¶¶ 123, 126). Plaintiff must identify a custom or policy. Since he has not done so for this claim, the Court must dismiss the Section 1983 claim in Count Four.

### C.    Count Four cannot proceed under a breach of contract theory because an IEP is not a contract.

Plaintiff also has not adequately pled a breach of contract claim. In Count Four, he contends his parents and the school entered into an IEP pursuant to 20 U.S.C. § 1412(a)(4), the IEP was "a binding contract between the School and the Plaintiff," and his removal from the IBC program was a breach of contract. (ECF No. 1 at ¶¶ 121-24). To the contrary, these facts cannot constitute a breach of contract because an IEP developed under the IDEA is not a contract. It is a plan for a child's education, determined by the parents of a child and relevant school staff members.

To plead a claim for breach of contract, it is axiomatic that a plaintiff must establish that "the parties entered into a contract containing certain terms . . . ." *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021). "'[T]he basic features of a contract' are 'offer, acceptance, consideration, and performance by both parties.'" *Id*. (quoting *Shelton v. Restaurant.com, Inc*., 70 A.3d 544, 556 (2013)). A contract arises from offer and acceptance, and must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.' *Id*. (quoting *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992)). To enter into a contract, the parties must reach a "meeting of the minds" on its terms. *Morton v. 4 Orchard Land Tr.*, 849 A.2d 164, 170 (N.J. 2004).

An IEP does not fit into this framework. It is "a federal statutory creation." *Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 820 (9th Cir. 2007).

"The IEP is 'the centerpiece of the [IDEA's] education delivery system for disabled children.'" *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 580 U.S. 386, 391 (2017) (quoting *Honing v. Doe*, 484 U.S. 305, 311 (1988)). It is prepared "by a child's 'IEP Team' (which includes teachers, school officials, and the child's parents)" and "must be drafted in compliance with a detailed set of procedures." *Id.* "[C]ourts have rejected efforts to frame challenges to IEPs as breach-of-contract claims." *Van Duyn*, 502 F.3d at 820 (citing *Ms. K v. City of South Portland*, 407 F. Supp. 2d 290, 301 (D. Me. 2006)). It "is a plan, not a contract." *N.N.J. ex rel. L.J. v. Sch. Bd. of Broward Cty.*, 927 F.3d 1203, 1212 (11th Cir. 2019) (citing 20 U.S.C. 1414(d)(1)(A)(i)). There is no offer, no acceptance, and no consideration, the basic elements of a contract.

The Complaint is silent on all of these critical features of contract formation. Plaintiff fails to allege who made an offer, who accepted the offer, and what the mutual consideration was. He cannot allege these crucial facts because an IEP is not a contract. It is a plan for a child's education that the child's parents and school employees develop collaboratively to ensure the child receives a free and appropriate public education in the least restrictive environment. This is not a process that yields a contract. Plaintiff cannot contend that a violation of his IEP constitutes a breach of contract because no one ever intended that the IEP would be a contract.

## IV.    The Court must dismiss Count Four against Aufiero and Elmera.

In addition to the claim against the Board in Count Four, Plaintiff brings claims against Aufiero and Elmera under Section 1983 and 1986 as well as for breach of contract for the removal of Plaintiff from the IBC program. (ECF No. 1 at 16). None of these claims can proceed.

### A.    Plaintiff has not alleged that Aufiero or Elmera were parties to a contract.

Count Four of the Complaint alleges that "The Plaintiff's parents entered with *the School* into an IEP . . . ." (ECF No. 1 at ¶ 121) (emphasis added). In the next paragraph, he confirms: "The IEP constituted a binding contract between *the School* and the Plaintiff." (ECF No. 1 at ¶ 122) (emphasis added). Nowhere, however, did Plaintiff allege that Aufiero or Elmera were parties to this "contract"[3] or any other contract. This is the most basic fact necessary for any breach of contract lawsuit. Without an allegation that Aufiero or Elmera were parties to a contract, he cannot sue them for breach of contract. Accordingly, the Court must dismiss the breach of contract claim against Aufiero and Elmera in Count Four.

---

[3] As discussed above, an IEP is not a contract. Therefore, assuming Plaintiff has alleged Aufiero and Elmera were parties to the IEP, they are not liable for breach of contract if there was a violation of the IEP.

**B.    The Court must dismiss the Section 1983 claim because Section 1983 cannot be used to remedy violations of the IDEA.**

Plaintiff alleges that Aufiero and Elmera "deprived Plaintiff of the right to receive an education pursuant to the terms established under 20 U.S.C.A. § 1412(a)(4)." (ECF No. 1 at ¶ 127). Since this statute is part of the IDEA, it appears that Plaintiff is attempting to use Section 1983 to remedy what he alleges was a violation of his rights under the IDEA. The Third Circuit has held this is impermissible. *A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 803-05 (3d Cir. 2007). As the Third Circuit held, "Congress did not intend § 1983 to be available to remedy violations of the IDEA . . . ." *Id*. at 803. Therefore, the Court must dismiss the Section 1983 claim in Count Four against Aufiero and Elmera because Plaintiff cannot use an IDEA violation as a basis for Section 1983 liability.

**C.    The Court must dismiss the Section 1986 claim.**

As discussed in Point II, a Section 1986 claim cannot exist without a valid claim under Section 1985. Since no underlying Section 1985 claim exists, Plaintiff cannot proceed against Aufiero and Elmera under Section 1986. Therefore, the Court must dismiss the Section 1986 claim against Aufiero and Elmera in Count Four.

**V.    The Court must dismiss Count Seven against Mayer-Regalbuto and Count Eight against Mayer-Regalbuto and Aufiero.**

In Counts Seven and Eight, Plaintiff brings defamation claims against Mayer-Regalbuto and Aufiero. Count Seven, against only Mayer-Regalbuto, alleges that

she fabricated a "false report" that "Plaintiff touches his father and that doing it is 'a secret' and that Plaintiff gets a 'special surprise from it . . . .'" (ECF No. 1 at ¶ 151). He then alleges that she submitted a report to DCPP containing "false information that [she] conveyed as true, such as that Plaintiff is a victim of 'sexual abuse' and 'sexual molestation . . . .'" (ECF No. 1 at ¶). According to Plaintiff, Mayer-Regalbuto did this "with actual malice to injure Plaintiff, despite knowing that the report [was] utterly false," because she "had a crusade to injure Plaintiff as a minor in revenge to [sic] the animosity Mayer had that Plaintiff [was] in her classroom." (ECF No. 1 at ¶ 155).

Count Eight is another defamation claim, brought against both Mayer-Regalbuto and Aufiero, regarding the same facts as Count Seven.[4] He alleges the same statements from Mayer-Regalbuto, but now adds that Aufiero reported "that Plaintiff is a victim of sexual abuse and sexual molestation," she "transmitted the false report," and Aufiero and Mayer-Regalbuto "fabricated" the "false report" together. (ECF No. 1 at ¶¶ 158-159). According to Plaintiff, they did this because they "had a vendetta to injure Plaintiff as a minor." (ECF No. 1 at ¶ 161).

---

[4] To the extent that Count Eight presents the same claim, based on the same facts, as Count Seven, the Court must dismiss Count Eight against Mayer-Regalbuto because the claim is wholly duplicative of Count Seven. Without new factual allegations or a different theory of recovery, the Complaint provides no basis for Mayer-Regalbuto to face Count Eight.

The Court must dismiss both defamation counts because the statements Plaintiff alleges Mayer-Regalbuto and Aufiero made are not defamatory. In New Jersey, a defamation claim requires three essential facts: (1) "a false and defamatory statement" about the plaintiff; (2) the statement must have been "communicated to another person (and not privileged); and (3) the defendants must have "acted negligently or with actual malice," depending on the situation. *G.D. v. Kenny*, 15 A.3d 300, 310 (N.J. 2011). Plaintiff cannot meet the first element.

As the New Jersey Supreme Court has explained, "A defamatory statement, generally, is one that subjects an individual to contempt or ridicule, one that harms a person's reputation by lowering the community's estimation of him or by deterring others from wanting to associate or deal with him." *Id.* (citations omitted). "To determine whether a statement is defamatory, a court looks to the fair and natural meaning to be given to the statement by reasonable persons of ordinary intelligence." *Id.* (internal quotation marks omitted). Whether the "statement is susceptible of a defamatory meaning is a question of law for the court." *DeAngelis v. Hill*, 847 A.2d 1261, 1268 (N.J. 2004).

The statements Plaintiff alleges Mayer-Regalbuto and Aufiero made—statements he alleged were made only to a state child abuse reporting hotline—had no capacity to subject Plaintiff to contempt or ridicule, harm his reputation, lower the community's estimation of him, or deter others from dealing with him. Crucially,

Plaintiff has not alleged any of these things happened to him. Nor could he because, at most, the statements which indicated he was a young child who was a victim of abuse would have led a reasonable person of ordinary intelligence to view Plaintiff with sympathy and kindness and offer him assistance. *See Sarwer v. Conde Nast Publ'ns, Inc.*, 654 N.Y.S.2d 768, 769 (N.Y. App. Div. 1997) ("the effect of the article as a whole [was] to leave the reader with only sympathy for plaintiff as a victim of child abuse").

Even if the statements were defamatory, they were defamatory solely to Plaintiff's father as the alleged perpetrator of the abuse—and Plaintiff cannot recover for any damages his father suffered. *See Cruz v. Latin News Impacto Newspaper*, 627 N.Y.S.2d 388, 390 (N.Y. App. Div. 1995) ("Plaintiff's claim that the statement, attributed to her, that her husband infected her as the result of patronizing prostitutes was defamatory could be defamatory as to *him*, not *her*."). Plaintiff cannot state a claim for defamation based on the facts pled in the Complaint.

## CONCLUSION

For the above reasons, School Defendants respectfully request that this Court grant the within Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), and enter an Order dismissing, with prejudice, each claim against the School Defendants, Kelly Mayer-Regalbuto, Nicole Elmera, Patricia Aufiero, and the New Milford Board of Education.

FOGARTY & HARA, ESQS.
Attorneys for Defendants,
Kelly Mayer-Regalbuto, Patricia
Aufiero, Nicole Elmera, and the New
Milford Board of Education

By: _/s/ Vittorio S. LaPira_
Vittorio S. LaPira

Dated: December 13, 2024