**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **Y.Y.,**<br><br>          **Plaintiff,**<br><br>     v.<br><br>**KELLY MAYER- REGALBUTO,**<br>**PATRICIA AUFIERO, NICOLE**<br>**ELMERA, NEW MILFORD BOARD OF**<br>**EDUCATION** *also known as*<br>**NEW MILFORD PUBLIC SCHOOL**<br>**DISTRICT, KIMBERLY ROBERTS,**<br>**VERONICA ZERON, and SUSAN**<br>**LENNON,**<br><br>          **Defendants.** | **Civil Action No. 24-8401 (CCC)**<br><br>**OPINION** |

**CLARK, Magistrate Judge**

**THIS MATTER** comes before the Court on a motion by Plaintiff Y.Y. ("Plaintiff") seeking leave to proceed pseudonymously in this matter and for entry of a standing order of confidentiality regarding "Plaintiff's identity and his family." Dkt. No. 56. Defendants oppose Plaintiff's motion. Dkt. Nos. 58, 59.[1] Plaintiff filed a reply. Dkt. No. 62. The Court has carefully considered the relevant submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Plaintiff's motion [Dkt. No. 56] is **DENIED**.

---

[1] Defendants Patricia Aufiero, Nicole Elmira, Kelly Mayer-Regalbuto, and New Milford Board of Education are hereinafter referred to as the "School Defendants" and Defendants Susan Lennon, Kimberly Roberts, and Veronica Zeron are hereinafter referred to as the "DCPP Defendants."

I.        **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff filed this federal civil rights action on August 12, 2024, asserting federal civil rights violations under 42 U.S.C. §§ 1983, 1985, and 1986, 28 U.S.C. § 1331, and additional claims of defamation against Defendants. Dkt. No. 1 ("Compl."). Plaintiff complains of actions allegedly taken by the School Defendants while Plaintiff was a minor student in their care and of actions taken by employees of the DCPP concerning the rights of Plaintiff and his family, also when Plaintiff was a minor. *See generally Compl.*; *see also* Dkt. No. 56-1 (hereinafter, "Mot.") ¶ 2.

At the age of 5, Plaintiff was enrolled as a student in the New Milford Public School District (the "District"). Compl. ¶ 16. Before enrolling in the District, Plaintiff was diagnosed with several learning, social, relational, and communicative disabilities, including Asperger's Syndrome and high-functioning autism. *Id.* ¶ 19. He was also unable to speak in complete sentences. *Id.* ¶ 18. To meet Plaintiff's specialized needs, the District created an individualized education program ("IEP") for Plaintiff's education. *See Id.* ¶¶ 18-20.

In the academic year of 2010-2011, Plaintiff was enrolled in a program within the District called the Inner Bridge Crossing ("ICB") program. *Id.* ¶ 21. Plaintiff states that ICB was created by the District in 2009 "to comply with the requirement that [K-12] children with disabilities be educated in a least restrictive environment." *Id.* ¶¶ 22, 23. To promote the development of children within ICB, classroom sizes were comprised of six or less similar children. *Id.* ¶ 24. Plaintiff "excelled" in the ICB program during the academic year of 2010-2011, "comple[ting] the requisite education . . . with minimal intervention [from his teacher]," who tailored Plaintiff's learning to Plaintiff's individual needs. *Id.* ¶¶ 28-28.

Notwithstanding Plaintiff's apparent progress, employees of the District, Defendants Patricia Aufiero ("Aufiero") and Nicole Elmera ("Elmera"), "insisted" that Plaintiff's teacher

adopt a method of learning termed Applied Behavior Analysis ("ABA"). *Id.* ¶ 28.  Plaintiff claims that Aufiero and Elmera insisted on the ABA model of instruction even though Plaintiff's teacher and his parents believed the model would "not work" for Plaintiff. *Id.*; *see also* ¶¶ 29, 32.  Plaintiff alleges that the District directed Aufiero and Elmera to continue instructing Plaintiff through the ABA model because "the State and insurance acknowledge and reimburse only ABA treatment, whereas other treatments, albeit effective, do not receive funding." *Id.* ¶ 30.

In the next academic year, 2011-2012, "Aufiero and Elmera unilaterally removed Plaintiff from the ICB program and placed him in the classroom of [Defendant] Kelly Mayer-Regalbuto ("Mayer")." *Id.* ¶ 33.  Aufiero and Elmera explained Plaintiff's removal from ICB by "falsely proclaim[ing]" that the ICB program ceased after the termination of Plaintiff's former teacher. *Id.* ¶ 34.

As a student in Mayer's classroom, Plaintiff experienced difficulties, allegedly resulting from his separation from his former peers, and feelings of isolation. *Id.* ¶ 36.  Plaintiff claims that Mayer operated a classroom environment that was not intended for disabled children, asserting specifically that Mayer was not "trained []or experienced with education for individuals diagnosed with Asperger's Syndrome or any of the other diagnoses of Plaintiff[.]" *Id.* ¶¶ 37-38, 40.  Because Plaintiff felt he could not "relate to the learning environment of [] Mayer's classroom," he "developed extreme anxiety." *Id.* ¶ 41.  This prompted Plaintiff's parents to request that Plaintiff resume education under the ICB program. *Id.* ¶ 42.

Plaintiff remained a student in Mayer's classroom throughout the 2011-2012 academic year.  In the following academic year, Plaintiff was once again assigned to Mayer's classroom. *Id.* ¶ 43.  Thereafter, "Mayer became hostile to Plaintiff and orchestrated a scheme to personally injure

3

Plaintiff in the hopes of having Plaintiff removed from her classroom." *Id.* ¶ 44.  At the time, Plaintiff was 7 years old.  *Id.* ¶ 45.

As part of Mayer's perceived "hostil[ities]," Plaintiff states that, on February 1, 2013, Mayer fabricated a false report concerning Plaintiff that was transmitted to the New Jersey Division of Child Protection and Permanency (the "DCPP").  *Id.* ¶ 46.  The report allegedly led the District and the DCPP to suspect that Plaintiff was a victim of sexual molestation and sexual abuse.  According to Plaintiff, the report stated, among other events, that Plaintiff made unsolicited comments within Mayer's classroom about "touch[ing]" his father.  *Id.* ¶¶ 46-49.

Plaintiff and his parents denied the allegations in the report and continue to assert its falsity. *See id.* ¶¶ 50-52, 54.  Defendant Kimberly Roberts ("Roberts"), an employee of the DCPP, and the New Milford Police Department, also a Defendant in this action, "were unable to validate" the report.  *Id.* ¶ 53; *see also id.* ¶¶ 55-59.  On the same day the report was made, the case was apparently closed by the Bergen County Prosecutor's Office for lack of "reasonable suspicion of a crime."  *Id.* ¶ 60.

Although the possibility of a criminal case against Plaintiff's parents was foreclosed, Plaintiff claims that DCPP employees Roberts and Defendant Veronica Zeron ("Zeron") engaged in subsequent violations of Plaintiff's civil rights.  *Id.* ¶ 62.  Also on February 1, 2013, Plaintiff states that Roberts met with Plaintiff's father, Y.W., for 30 minutes at Plaintiff's apartment. *Id.* ¶ 63.  Later in the evening on the same night, Roberts "approached A.H. (Plaintiff's mother)" and "inform[ed]" Plaintiff's mother that the DCPP would be imposing a safety plan regarding Plaintiff (hereinafter, the "Safety Plan").  *Id.* ¶¶ 65-66.  Roberts allegedly stated that the purpose of the Safety Plan was to place Plaintiff in foster care and initiate adoption proceedings.  *Id.* ¶ 69.

Among other purported terms, the Safety Plan imposed several conditions on Plaintiff and his parents, including restricting Plaintiff's rights to be at his residence and restricting Plaintiff from associating with his father absent supervision by the DCPP. *See id.* ¶¶ 70-71, 74. Plaintiff submits that Roberts and Zeron imposed the Safety Plan with the ultimate intent of "manufactur[ing] a basis for a criminal prosecution of Plaintiff's father." *Id.* ¶ 76.

Following implementation of the Safety Plan, Plaintiff states he was directed by DCPP employees, Defendant Susan Lennon ("Lennon"), Zeron, and Roberts, to undergo a series of medical and psychological examinations. Plaintiff claims those examinations amounted to an invasion of his personal privacy. *See id.* ¶¶ 77, 85.

In sum, the crux of Plaintif's Complaint is that Defendants' collective actions jeopardized Plaintiff's education and violated his constitutional rights, causing Plaintiff to suffer from chronic depression and related medical treatments, and also causing Plaintiff to become mentally withdrawn from society. *Id.* ¶¶ 93-94.

Plaintiff's Complaint filed on August 12, 2024 refers to Plaintiff only by his initials, Y.Y. On August 8, 2025, nearly one year after the case was filed, Plaintiff filed the instant motion seeking leave pursuant to Federal Rule of Civil Procedure 10(a) to proceed with his initials and for a standing order of confidentiality governing the disclosure of documents pertaining to Plaintiff and his family in light of the nature of his claims, which involve facts pertaining to "Plaintiff's educational records, medical records, medical diagnosis, and [] charges relat[ing] to sexual abuse." Dkt. No. 56-1 ("Mot.") ¶ 24.

Plaintiff argues that anonymity is appropriate in this "exceptional" case because he has shown (1) a fear of severe harm and (2) that the fear of severe harm is reasonable. *Id.* ¶ 25 (citing *Doe v. Jia Lun Shao*, No. 24-9972 (BRM), 2025 WL 942929 (D.N.J. March 28, 2025)). In addition

to fulfilling these two requirements, Plaintiff contends that he has demonstrated, through application of a nine-factor balancing test, that allowing him to proceed anonymously would not outweigh the public interest in an open litigation process. *Id.* (citing *id.*).

The School Defendants and the DCPP Defendants have each filed an opposition to Plaintiff's motion. *See* Dkt. Nos. 58 (hereinafter, "Opp'n"), 59. They contend that Plaintiff's use of a pseudonym is not appropriate in this non-exceptional case, and argue that Plaintiff has not demonstrated a reasonable fear of severe harm. *See generally id.* Defendants further contend that allowing Plaintiff to proceed pseudonymously is contrary to the public interest. *Id.*

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 10(a) requires parties to a lawsuit to identify themselves in their respective pleadings. Fed. R. Civ. P. 10(a). "Courts have explained that Federal Rule of Civil Procedure 10(a) illustrates 'the principle that judicial proceedings, civil as well as criminal, are to be conducted in public.'" *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011) (quoting *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir.1997)). "Generally, [a] plaintiff's use of a pseudonym runs afoul of the public's common law right of access to judicial proceedings." *Id.* (internal quotations and citation omitted). Absent statutory authority, courts will allow a party to proceed anonymously only in "exceptional cases." *Id.*

"The fact that a litigant may 'suffer embarrassment or economic harm is not enough' to justify proceeding by pseudonym." *B.L. v. Fetherman*, No. 22-3471, 2023 WL 1818402, at *2 (D.N.J. Feb. 8, 2023) *aff'd* 2023 WL 3004853 (D.N.J. Apr. 18, 2023). Instead, a plaintiff must show a "fear of severe harm" that is "reasonable." *Megless*, 654 F.3d at 408 (quoting *Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1043 (9th Cir. 2010)). In deciding whether a plaintiff has presented a reasonable fear of severe harm that justifies proceeding

pseudonymously, courts in the District of New Jersey apply the non-exhaustive list of factors articulated by the Third Circuit in *Doe v. Megless*. *Id.*; *see also Doe v. Provident Life and Acc. Ins. Co.*, 176 F.R.D. 464, 467 (E.D. Pa. 1997) (originally presenting factors).[2] The applicable balancing test considers the following factors in favor of anonymity:

> (1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives.

*Doe v. Megless*, 654 F.3d at 409 (quoting *Provident Life*, 176 F.R.D. at 467-68).  Thereafter, the court must consider the following factors counseling against anonymity:

> (1) the universal level of public interest in access to the identities of litigants; (2) whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and (3) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.

*Id*.  "Ultimately, the Court exercises its discretion in determining whether to permit a plaintiff to proceed under a pseudonym." *Doe I. v. Chaparro*, No. 25-13961, 2025 WL 3707509, at * 2 (D.N.J. Dec. 22, 2025) (citing *Doe v. Oshrin*, 299 F.R.D. 100, 103 (D.N.J. 2014)).

---

[2] In *Megless*, the Third Circuit adopted the non-exhaustive list of factors originally set forth in *Provident Life*.  The Court therefore refers to the relevant factors as the *Megless* factors.

### III.    ANALYSIS

#### A. *Megless* Factors Weighing in Favor of Anonymity

##### 1. The First Factor

The first factor considers the extent to which Plaintiff's identity has been kept confidential. *Megless*, 654 F.3d at 409.  This factor "favor[s] plaintiffs who 'make substantial efforts to maintain anonymity' and 'limi[t] the disclosure of sensitive information to few other people.'" *Doe v. Rider Univ.*, No. 16-4882, 2018 WL 3756950, at *3 (D.N.J. Aug. 7, 2018).  As evidence that he has taken steps to protect his identity, Plaintiff points to the Complaint, which was filed under Plaintiff's initials, Y.Y.  Plaintiff also contends he has taken additional steps to protect his identity within the judicial system because his identity was kept confidential in two related actions brought by Plaintiff's father in 2014.  Mot. ¶ 27 (citing two related actions, one federal and one state).

Defendants argue that Plaintiff's decision to file this action proceeding as Y.Y. as opposed to "John Doe" demonstrates that Plaintiff has not "take[n] the simplest of steps to maintain anonymity."  Opp'n pp. 4-5.  They also assert that Plaintiff's anonymity in the previous lawsuits filed by his father cannot be interpreted in this case as "Plaintiff taking action to safeguard his identity."  *Id.* p. 5.

Plaintiff repeatedly contends that the factual allegations in the complaint involve highly sensitive private and confidential information.  There is no question that facts pertaining sexual assault, disabilities like Plaintiff's, and mental illness are generally sensitive issues.  Yet, Plaintiff has not moved to seal the Complaint or any other filings in the case.  In fact, the present motion

contains a certification of Plaintiff's counsel reiterating many of the factual allegations contained in the Complaint.[3]

Furthermore, Plaintiff contends that, but for the notice pleading standard articulated by the Supreme Court in *Ashcraft v. Iqbal*, 556 U.S. 662 (2009), the allegations in the Complaint would be "confidential under the law." Mot. ¶ 26. On that basis, Plaintiff argues that he should be permitted to proceed anonymously. Plaintiff's argument concerning *Iqbal* is unavailing. Even assuming *Iqbal* required Plaintiff to plead the allegations to the same extent, Plaintiff could have filed the Complaint under seal as a "John Doe" action and moved to seal subsequent documents containing highly sensitive or personal information. Instead, Plaintiff filed his motion to proceed anonymously nearly one year after the case was initiated.

Here, there is nothing in the record to suggest that Plaintiff has ever publicly disclosed his identity in connection with this matter. Plaintiff's identity is not disclosed in any of the pleadings, motions, or other filings in this action. Nevertheless, the Court is thus somewhat persuaded by Defendants' argument that the Court should not impute Plaintiff's anonymity in the prior lawsuits to "substantial" actions Plaintiff has now taken to safeguard his identity, since in those prior lawsuits Plaintiff was a minor and his anonymity was required as a matter of law. *See* Fed. R. Civ. P. 5.2(a)(3). Moreover, neither the Complaint nor the instant motion directly references Plaintiff's

---

[3] *See* Mot. pp. 1-9 (repeating allegations from Complaint, including (i) Mayer's allegedly false reporting of events that took place while Plaintiff was a student in Mayer's classroom, giving rise to a DCPP investigation of Plaintiff's parents; (ii) the alleged physical and mental examinations performed upon Plaintiff at the direction of the DCPP; and (iii) Plaintiff's disabilities and mental health conditions).

current age.  Plaintiff has left the Court to review the entirety of the docket and conclude on its own that Plaintiff is now an adult.[4]

Importantly, Plaintiff does not specify what steps he has taken, if any, to limit disclosure of his identity and sensitive personal information to other members of the public. "[Plaintiff] fails to identify those with knowledge of h[is] identity, yet in h[is] complaint []he details specific events and names individuals involved," suggesting "that [Plaintiff's] identity has not been kept confidential."  *See Doe v. Felician Univ.*, No. 18-13539, 2019 WL 2135959, at \*3 (D.N.J. May 15, 2019).

In sum, the first factor presents reasons for and against allowing Plaintiff to proceed pseudonymously.  Plaintiff's identity has so far remained confidential in this case and in previous related lawsuits initiated by Plaintiff's father when Plaintiff was a minor.  However, the Court concludes that Plaintiff's efforts to remain anonymous cannot be construed as "substantial," since Plaintiff has not addressed whether "disclosure of [his] sensitive information" was limited to "few other people."  *Rider Univ.*, 2018 WL 3756950, at \*3.  The first factor is therefore neutral at best.

### 2.  The Second Factor

The second factor examines "the harm the litigant is seeking to avoid, and [whether] []the litigant's fear [is] reasonable."  *Megless*, 654 F.3d at 410.  Plaintiff addresses this factor with greater specificity than the first.  Plaintiff generally contends that disclosure of his identity would exacerbate Plaintiff's "vulnerabilities associated with the stigmas that [he] faces" in regard to his disabilities and the past events comprising the allegations in the Complaint.  Mot. ¶ 29.

---

[4] *See* Compl. ¶¶16, 21, 43, 45 (stating that Plaintiff was enrolled in the District at the age of 5 which was presumably "the academic year of 2010-[20]11" and that, in or around the academic year of 2012-2013, Plaintiff was 7 years old); *see also* Pl.'s Opp'n to School Defs.' Mot. to Dismiss, Dkt. No. 29 ¶ 23 (stating Plaintiff reached the age of majority on August 14, 2022, prior to the filing of this litigation).

In support of this general argument, Plaintiff contends that public knowledge of his educational history and medical conditions "creates a stigma that would prevent Plaintiff from being a candidate for competitive employment and higher education." *Id.* ¶ 30. The Court is unpersuaded by this assertion. Disclosure of Plaintiff's identity would not by any means disqualify him from employment. There are existing state and federal labor and employment laws that protect against discrimination in the employment of individuals with disabilities. *See* Opp'n p. 7 (citing, e.g., New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.*, and Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*). Higher education institutions also accept and accommodate individuals with disabilities such as Plaintiff. Thus, it is highly speculative that "employers and institutions [would] fear that interacting with Plaintiff would burden them with the accommodations for his disabilities." Mot. ¶ 30.

Next, Plaintiff contends that he must proceed anonymously because he faces risks of bullying and general security. Plaintiff states that his "vulnerabilities can be exploited by criminals and other dangerous elements of society." *Id.* ¶¶ 31-32. In response, Defendants argue that Plaintiff has not presented "a colorable basis on which he can reasonably fear any harm from public availability of his identity." Opp'n p. 6.

The Court is highly sensitive to the security and bullying concerns raised by Plaintiff. Nonetheless, "[t]he use of a pseudonym is an extraordinary measure reserved for unique cases." *Fetherman*, 2023 WL 3004853, at *2 (quoting *Megless*, 654 F.3d at 408). Plaintiff has not received any threat of physical harm related to this action. Plaintiff's alleged bullying incidents took place when he was a minor and occurred mostly at school, and Plaintiff is no longer a student. Plaintiff does not present any specific future situations where he is likely to be harmed or bullied. As such, the Court finds that the risks of harm specified by Plaintiff, although generally

11

concerning, do not constitute specific, non-speculative risks of harm. It is not enough that Plaintiff has "many fears." Mot. p. 11, ¶ 29; *see Rider*, 2018 WL 3756950, at *5 ("[F]ears of embarrassment or economic harm do not without more outweigh the strong public interest in open litigation.") (citing *Megless*, 654 F.3d at 408). Accordingly, for the reasons stated, the second factor weighs against the use of a pseudonym.

### 3.  The Third Factor

"Third, the Court must consider the 'magnitude of the public interest in maintaining the confidentiality of the litigant's identity[.]'" *Doe (C.M.) v. Red Roof Inns, Inc.*, No. 25-13761, 2025 WL 3123652, at *4 (D.N.J. Nov. 6, 2025) (citing *Megless*, 654 F.3d at 410). This factor supports anonymity if "other similarly situated litigants [would] be deterred from litigating claims that the public would like to have litigated[ ]" if they could not proceed pseudonymously. *Id.* (citing *Megless*, 654 F.3d at 409).

Generally, courts in this district have allowed a party to proceed anonymously where the issues at stake include "abortion, birth control, transsexuality, mental illness, welfare rights of legitimate children, AIDS, and homosexuality." *Doe v. Princeton Univ.*, No. 19-7853, 2019 WL 5587327, at * 3 (D.N.J. Oct. 30, 2019) (quoting *Provident Life and Acc. Ins. Co.*, 176 F.R.D. at 467). The District of New Jersey has also recognized the right to proceed anonymously for alleged victims of sex trafficking, sexual assault, and child pornography.[5] For cases that are not typically given anonymity, such as employment discrimination cases, the Third Circuit has suggested that

---

[5] *See Doe (C.M.)*, 2025 WL 3123652, at *4 (holding third factor weighed in favor of anonymity where plaintiff was one of several alleged victims of sex trafficking ring); *Doe v. Evans*, 202 F.R.D. 173, 176 (E.D. Pa. 2001) (finding that "the public has an interest in protecting the identities of sexual assault victims so that other victims will feel more comfortable suing to vindicate their rights"); *Oshrin*, 299 F.R.D. 100, 102, 105 (D.N.J. 2014) (permitting victim of child pornography to proceed by pseudonym).

the party seeking anonymity must establish a need for it by demonstrating that the case is "meaningfully different" from other similar cases. *See Doe v. College of New Jersey*, 997 F.3d 489, 495 (3d Cir. 2021). This is in line with the principle that a plaintiff seeking to proceed anonymously must present an "exceptional" case.

For this factor, Plaintiff argues that anonymity is warranted based upon the "confidential" nature of the records pertaining to Plaintiff's education, his medical history, and the "sex abuse investigation" of Plaintiff's father. *See* Mot. ¶¶ 34-39. According to Plaintiff, a Discovery Confidentiality Order ("DCO") would not be adequate to preserve Plaintiff's confidential information because "such order only protects the producing party who designates a document as confidential." Thus, Plaintiff states he would be unable to designate Defendants' documents as confidential, risking disclosure of his confidential information. Dkt. No. 62 ("Reply") ¶ 19.

The confidentiality of documents is an issue separate from whether Plaintiff should be permitted to proceed anonymously. *See Rider Univ.*, 2018 WL 3756950, at * 4. As such, the Court will reserve judgment on the confidentiality of Plaintiff's records at this juncture.

As for Plaintiff's argument that a DCO would be inadequate to safeguard his personal information, the Court notes that, under a DCO, "any party to th[e] litigation . . . shall have the right to designate as 'Confidential' and subject to th[e] Order any information, document, or thing, or portion of any document or thing" that contains "private or confidential personal information" or other information which a party believes is entitled to protection the applicable federal and Local Civil Rules. *See* L. Civ. R. App'x S ¶ 1 (Confidentiality Order).

As Defendants aptly state, "[s]uch an order would vest Plaintiff with the ability, when appropriate, to designate materials as either 'Confidential' or 'Attorneys' Eyes Only,' and require any document so designated to be filed under seal . . . ." Opp'n p. 12. Entry of a DCO in this case

would therefore alleviate Plaintiff's concerns over the confidentiality and personal nature of his medical, educational, and other sensitive records. "Defendants have stated repeatedly that they were willing (and remain willing) to enter into a confidentiality order." *Id.* The Court therefore concludes as to the third *Megless* factor that "[t]here is no evidence that requiring [Plaintiff] to disclose his name will deter other similarly situated plaintiffs from suing in the future." *See Megless*, 654 F.3d at 410. Plaintiff has not argued as much, and the entry of a DCO would appear to offer sufficient protection for Plaintiff's personal and confidential information here.

Additionally, although certain vulnerable classes have been deemed worthy of protected status, and there is no question that Plaintiff experiences certain "vulnerabilities" in his daily life, Plaintiff's status does not by itself suggest that other similarly situated litigants would be deterred from litigating similar claims were they unable to proceed anonymously. Crucially, the nature of Plaintiff's claims does not inherently support the use of a pseudonym. Plaintiff states that the Defendants committed "torts." Mot. ¶ 23. Whether Plaintiff is a victim of sexual assault or abuse is not at issue. Instead, the issue is whether Defendants' past conduct regarding Plaintiff's education and the DCPP's alleged interference with Plaintiff's upbringing violated Plaintiff's civil rights and defamed Plaintiff. As stated, the third factor weighs in favor of Defendants.

### 4. The Fourth Factor

"With respect to the fourth factor, the Court examines the public interest, if any, in ascertaining Plaintiff's identity." *Oshrin*, 299 F.R.D. 100 at 104 (citing *Megless*, 654 F.3d at 409). The Court finds that there is no public interest in discovering Plaintiff's identity. Although Plaintiff argues it is in the public interest for Plaintiff to maintain confidentiality throughout this case, Plaintiff's is a private citizen seeking to litigate private issues. Plaintiff does not make any at-large constitutional claims regarding sexual assault, child abuse, disabilities, the educational system, or

14

family affairs.  Again, Plaintiff asserts numerous violations of his civil rights and claims of defamation.  For example, Plaintiff contests the quality of his own minor education and the legality of the School Defendants' conduct towards him.  Mot. ¶¶ 22-23.  Hence, it appears that the overall circumstances of Plaintiff's case weighs against anonymity.

### 5.    The Fifth Factor

The fifth *Megless* factor considers whether the litigant would **"**potentially sacrifice a valid claim simply to preserve [] anonymity."  *Fetherman*, 2023 WL 3004853, at *2 (quoting *Megless*, 654 F.3d at 410).  Plaintiff's attorney states that, absent anonymity, Plaintiff would be "forced to forgo" his case.  Mot. ¶ 41.  Plaintiff's counsel further asserts that any public identification of Plaintiff "would do more harm" than the potential benefits afforded by litigation Plaintiff's claims.  *Id.*  Defendants counter that the Court cannot be certain Plaintiff would abandon his claims absent anonymity, as the representation of abandonment was made by Plaintiff's attorney as opposed to Plaintiff himself.  Opp'n p. 14.  Defendants also proffer that Plaintiff's concerns are easily addressed by the entry of a DCO.  *Id.*

A plaintiff's "refusal to litigate openly by itself cannot outweigh the public's interest in open trials." *Fetherman*, 2023 WL 3004853, at *4 (quoting *Megless*, 654 F.3d at 410-11); *see also Doe v. Temple Univ.*, No. 14-cv-04729, 2014 WL 4375613, at *2 (E.D. Pa. Sept. 3, 2014) ("[N]o matter how sincere, a plaintiff's refusal to litigate openly by itself cannot outweigh the public's interest in open trials.").  Even assuming this factor weighs in favor of Plaintiff, this factor alone is insufficient for allowing Plaintiff to proceed anonymously.  *See Megless*, 654 F.3d at 410-11.

### 6.    The Sixth Factor

The sixth factor considers whether the party seeking to proceed pseudonymously has illegitimate ulterior motives.  *Megless*, 654 F.3d at 408.  Plaintiff submits that he has no ulterior

15

motives in obtaining confidentiality.  Mot. ¶ 42.  Defendants suggest the opposite.  They claim Plaintiff has an ulterior motive—to "protect[] his father from the potential embarrassment of being [publicly] identified as an alleged child molester."  *See* Opp'n pp. 15-16 (arguing Plaintiff's request for a "standing order of confidentiality . . . with regard to Plaintiff's identity *and [that] of his family*" indicates Plaintiff is actually concerned about disclosure of his father's identity) (citing Mot. p. 20) (alterations and emphasis in original).  The Court finds that Defendants have not presented sufficient evidence demonstrating that Plaintiff has an ulterior motive in seeking to proceed anonymously.  Therefore, the sixth factor favors anonymity.

### B.  Factors Weighing Against Anonymity

Having considered the factors that would support Plaintiff's request to proceed anonymously, the Court turns to the factors that weigh against allowing a litigant to proceed using a pseudonym.  The first factor considers the universal level of public interest in accessing the litigants' identities.  *Megless*, 654 F.3d at 409.  The second factor examines whether, "because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained."  *Id.*  The third and final factor considers whether Defendants, who oppose the use of a pseudonym, are illegitimately motivated.  *Id.*

First, as previously expressed, there is generally a high level of public interest in knowing litigants' identities.  *See Rider*, 2018 WL 3756950, at * 7 ("The publicness of proceedings is an essential quality of judicial proceedings.") (citing *Megless*, 654 F.3d at 408).  Therefore, the first factor weighs against the use of a pseudonym.  Second, public interest is "heightened" where "Defendants are public officials and government bodies."  *Megless*, 654 F.3d at 411 (quotations and citation omitted).  As such, the second factor strongly supports disclosure of Plaintiff's identity.

16

Finally, there is nothing in the record suggesting that Defendants have nefarious reasons for opposing Plaintiff's motion to proceed pseudonymously.  On the contrary, Defendants have repeatedly offered increased protection for Plaintiff's personal and confidential information by promising their consent to a DCO.

## IV.    CONCLUSION

Here, the Court has carefully considered the *Megless* factors weighing in favor of and against anonymity.  The Court concludes that the circumstances proffered in Plaintiff's motion militate against granting Plaintiff permission to proceed anonymously.  Although Plaintiff has presented general privacy interests, including his disabilities, mental health conditions, and a sensitive educational and familial history, the Court finds that Plaintiff has not demonstrated the requisite reasonable fear of severe harm.  Because Plaintiff has not shown that his case is "exceptional," the Court must not departure from the established rule favoring open judicial proceedings.  Accordingly, for the reasons set forth above, Plaintiff's motion to proceed pseudonymously [Dkt. No. 56] is **DENIED**.

Plaintiff shall file an Amended Complaint by no later than **April 9, 2026**, disclosing his identity.  *See Megless*, 654 F.3d at 407.  An accompanying Order follows this Opinion.

**IT SO ORDERED**.

*s/ James B. Clark, III*
**JAMES B. CLARK, III**
**United States Magistrate Judge**
Dated: 3/26/2026