**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| Y.Y.,<br><br>        Plaintiff,<br><br>   v.<br><br>KELLY MAYER-REGALBUTO, et al.<br><br>        Defendant. | Civil Action No.: 24-8401<br><br><br>**OPINION & ORDER** |

**CECCHI, District Judge.**

Before the Court is the motion of defendants Kelly Mayer-Regalbuto, Patricia Aufiero, Nicole Elmera, and the New Milford Board of Education (collectively, the "School Defendants") to dismiss (ECF No. 23; *see also* ECF No. 23-1 ("Sch. Br.")) plaintiff Y.Y.'s ("Plaintiff") complaint. ECF No. 1 ("Complaint" or "Compl."). Plaintiff opposed the motion (ECF No. 29 ("Opp. to Sch.")), and the School Defendants replied. ECF No. 33 ("Sch. Reply"). Also before the Court is the motion of defendants Kimberly Roberts, Veronica Zeron, and Susan Lennon, employees of the New Jersey Department of Child Protection and Permanency ("DCPP") (collectively, the "DCPP Defendants") to dismiss the Complaint. ECF No. 35; *see also* ECF No. 35-1 ("DCPP Br."). Plaintiff opposed that motion and also filed a cross motion for a declaratory judgment. ECF No. 64; *see also* ECF No. 64-1 ("Opp. to DCPP"). DCPP Defendants replied and opposed the cross motion, ECF No. 69, Plaintiff filed a reply to the cross motion, ECF No. 72, and DCPP Defendants filed a sur-reply. ECF No. 73. The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the School Defendants' motion to dismiss is granted in part and denied in part and the DCPP Defendants' motion to dismiss is granted.

I.      **BACKGROUND**

1

At the age of five, Plaintiff enrolled in a public school operated by Defendant New Milford Board of Education (the "School").  Compl. ¶ 16.  Because he was diagnosed with Asperger's Syndrome and other nonverbal learning disabilities, an "Individualized Education Program" ("IEP") was consummated to address his special needs education, *id.* ¶¶ 18–20, as required under the Individuals with Disabilities Education Act ("IDEA").  *See* 20 U.S.C. §§ 1412(a)(4), 1414(d)(1)(A)(i).  The School assigned a behavioral specialist, Defendant Nicole Elmera ("Elmera"), to monitor Plaintiff as part of the IEP.  Compl. ¶ 20.

Pursuant to the IEP, Plaintiff was enrolled in the Inner Bridge Crossing ("ICB") program for the academic year of 2010–2011 in the classroom of Kevin Flynn ("Flynn").  *Id.* ¶ 21, 25.  He asserts that this was the "proper program for [his] disabilities" and that he thrived in this environment.  *Id.* ¶¶ 21–24, 27.  At that time, the School allegedly represented to his parents that Flynn would continue working with him in future school years.  *Id.* ¶ 26.

Issues arose, however, when Elmera and Patricia Aufiero ("Aufiero"), another employee of the School,[1] insisted that Flynn apply the "Applied Behavior Analysis" ("ABA") model in his classroom.  *Id.* ¶ 28.  Plaintiff alleges upon information and belief that the School directed Aufiero and Elmera to do so because the "State and insurance . . . reimburse only ABA treatment."  *Id.* ¶ 30.  Flynn apparently resisted using this model because he found that it did not work for his students.  *Id.* ¶ 28.  Plaintiff's parents agreed with Flynn and asked Elmera not to use the ABA model with Plaintiff.  *Id.* ¶ 29.

Then, the following academic year of 2011–2012, Aufiero and Elmera removed Plaintiff from the ICB program.  *Id.* ¶ 33.  Aufiero and Elmera apparently stated that the ICB program ceased because Flynn was fired, which Plaintiff claims was false because the program continued

---

[1] The Complaint does not identify Aufiero's role at the School.

2

operating. *Id.* ¶¶ 34. In reality, according to Plaintiff, they removed him because they wanted to use the ABA model in the ICB program, a model which was unsuitable for Plaintiff. *Id.* ¶ 35.

Aufiero and Elmera then placed Plaintiff in the classroom of Defendant Kelly Mayer-Regalbuto ("Mayer-Regalbuto"), *id.* ¶ 33, where he struggled. He alleges that Mayer-Regalbuto was neither trained nor experienced in educating individuals with his specific disabilities. *Id.* ¶ 37. Instead, Mayer-Regalbuto led a class of students with physical disabilities. *Id.* ¶ 38. Plaintiff alleges that she "did not want Plaintiff in her classroom" and told Plaintiff's parents that she was not qualified to teach him. *Id.* ¶¶ 39–40. As he had a difficult time in her classroom, Plaintiff's parents repeatedly asked Aufiero and Elmera to return Plaintiff to the ICB program. *Id.* ¶¶ 41–42.

Despite these requests, the School placed Plaintiff in Mayer-Regalbuto's classroom again in the 2012–2013 academic year. *Id.* ¶ 43. He asserts that Mayer-Regalbuto then "became hostile" towards him and "orchestrated a scheme to personally injure Plaintiff," who was seven years old at the time, "in the hopes of having Plaintiff removed from her classroom." *Id.* ¶¶ 44–45.

This alleged scheme involved filing with the DCPP a purportedly false report stating that Plaintiff was the victim of sexual abuse. *Id.* ¶¶ 46, 48. On February 1, 2013, Mayer-Regalbuto reported to DCPP that Plaintiff had made a comment that children in a book were "touching their dad." *Id.* ¶ 46. Further, the report stated that Plaintiff said that he received a "special surprise" from touching his father ("Y.W.") in "secret." *Id.* ¶ 47. The report added that Plaintiff had stated "that his 'bottom' was bothering him and was itchy," that he "share[d] a bedroom with his mother, father, and his mother's boyfriend," and included that Plaintiff had been "humping" objects on several occasions in school. *Id.* ¶ 49. Plaintiff asserts that these allegations were false and that at the time he "was not able to communicate in complex or complete sentences." *Id.* ¶¶ 50–52.

On the same day that DCPP received the report, Defendant Kimberly Roberts ("Roberts"), a social worker for the DCPP, interviewed Plaintiff with a police detective. *Id.* ¶ 53. Although they showed Plaintiff the book that had prompted Plaintiff to comment about children "touching their dad," they were unable to validate any of the statements from the report. *Id.* ¶¶ 53–55. Plaintiff asserts that he denied that he was being abused. *Id.* ¶ 54. As a result, the Bergen County Prosecutor's Office closed the potential criminal investigation into Plaintiff's father. *Id.* ¶ 60.

Nevertheless, that evening, Roberts approached Plaintiff's mother and told her that she and Defendant Veronica Zeron ("Zeron"), another DCPP employee, were imposing a safety plan. *Id.* ¶ 65. As a condition of the plan, Plaintiff's parents were required to allow unannounced visits from Roberts, DCPP, and the police into their residence. *Id.* ¶ 71. Additionally, the plan restricted Plaintiff's right to be alone with his father without supervision. *Id.* ¶¶ 70, 74.

The DCPP imposed this plan indefinitely until Roberts and Zeron could facilitate an examination of Plaintiff. *Id.* ¶ 77–78. This testing, which was ordered by Defendant Susan Lennon ("Lennon"), another employee of DCPP, included both an invasive medical examination of Plaintiff's private areas, *Id.* ¶¶ 78–82, 85, and a psychological and social evaluation by a child abuse expert. *Id.* ¶ 84. Ultimately, the examination revealed no sign of abuse. *Id.* ¶¶ 83, 86–87.

## II.     LEGAL STANDARD

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). A claim is facially plausible when supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that contains "a formulaic recitation of the elements of a cause of action" supported by mere conclusory statements or offers "'naked

assertion[s]' devoid of 'further factual enhancement'" will not suffice.  *Id.*  (citation omitted).  In evaluating the sufficiency of a complaint, the court accepts all factual allegations as true, draws all reasonable inferences in favor of the non-moving party, and disregards legal conclusions.  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231–34 (3d Cir. 2008).

## III.   DISCUSSION

### A.   Claims Against the School Defendants

Plaintiff asserts six claims against the School Defendants.  For the reasons discussed below, the School Defendants' motion is granted in part and denied in part.

#### i.   Count One

In Count One, Plaintiff asserts a claim under 42 U.S.C. § 1983 against Mayer-Regalbuto for filing the purportedly false child abuse report.  The School Defendants move to dismiss this claim on two grounds.  First, they argue that Plaintiff lacks standing to pursue this claim against Mayer-Regalbuto. Sch. Br. at 4–5.  Second, assuming that Plaintiff does have standing, the School Defendants contend that Plaintiff has failed to state a claim under section 1983.  *Id.* at 5–7.

##### 1.   Standing

To establish constitutional standing, a plaintiff must show that (1) he suffered an injury in fact, (2) the injury is fairly traceable to the challenged conduct, and (3) the injury would likely be redressed by the requested judicial relief.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  School Defendants argue that Plaintiff has failed to allege an injury in fact that is fairly traceable to Mayer-Regalbuto's conduct.  Sch. Br. at 4–5.

Plaintiff's allegations suffice to plausibly show standing at this stage.  An injury in fact includes an "injury to one's constitutional rights."  *Food & Drug Admin. v. All. For Hippocratic Med.*, 602 U.S. 367, 381 (2024).  Plaintiff puts forth two such injuries: (1) the physical examination conducted by DCPP and (2) the interference with his association with his father.  *See Kade v.*

*Workie*, 238 F. Supp. 3d 625, 635 (D. Del. 2017) (noting that "[e]very violation of a person's bodily integrity is an invasion of his or her liberty" for the purposes of substantive due process (quoting *Washington v. Harper*, 494 U.S. 210, 237 (1990)); *Behne v. Halstead*, No. 13-56, 2014 WL 1689950, at *17 (M.D. Pa. Apr. 29, 2014) (recognizing that the First Amendment protects "the right of intimate association[, which] encompasses the right to enter into and maintain . . . family relationships"). Therefore, Plaintiff has adequately asserted an injury in fact at this stage.

Additionally, as pled, these injuries are fairly traceable to Mayer-Regalbuto's alleged conduct. Traceability "is akin to 'but for' causation in tort and may be satisfied even where the conduct in question might not have been a proximate cause of the harm." *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016) (citation modified); *see also Reading v. N. Hanover Twp., N.J.*, No. 23-1469, 2026 WL 102849, at *35 (D.N.J. Jan. 13, 2026) ("[T]raceability may be satisfied if the plaintiff can adequately plead facts that show . . . that the injury would not have occurred but-for the defendant's challenged conduct."). Plausibly alleging traceability at the motion to dismiss stage is a "low bar." *Hood v. Educ. Computer Sys., Inc.*, No. 24-666, 2025 WL 1284737, at *6 (W.D. Pa. May 2, 2025) (citation omitted).

Plaintiff has met this burden. DCPP would not have opened the abuse investigation had Mayer-Regalbuto not submitted a child abuse report. Further, DCPP would not have restricted Plaintiff's access to his father and conducted the examination had it not opened the investigation. Thus, Plaintiff plausibly pleads a causal chain between Mayer-Regalbuto's purportedly false report and the asserted injuries. *See Richard Roe W.M. v. Devereux Found.*, 650 F. Supp. 3d 319, 333 (E.D. Pa. 2023) (finding that the plaintiffs adequately alleged traceability where they asserted that the defendant's conduct "place[d] plaintiffs in danger of . . . future harm" even if that conduct was

6

not the "last link in the causal chain").  Accordingly, Plaintiff has plausibly alleged standing to pursue the claims in Count One.

### 2.    *Acting Under Color of Law*

To state a claim under section 1983, a plaintiff must allege "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011) (citation omitted).  The School Defendants argue that Mayer-Regalbuto was not acting under color of state law when she submitted the child abuse report.  Sch. Br. at 5–7.  Plaintiff disagrees because Mayer-Regalbuto[2] submitted the report while acting as a School employee.  Opp. to Sch. at 11–15.

As alleged, Mayer-Regalbuto acted under color of state law.  State employees will generally be deemed to have acted under color of state law when acting in their official capacities or while exercising their responsibilities under state law.  *Reddick v. Hicks*, No. 22-6926, 2025 WL 84336, at *4 (D.N.J. Jan. 14, 2025) (citing *West v. Atkins*, 487 U.S. 42, 50 (1988)); *see also Lamac v. Buchanan*, No. 13-1338, 2016 WL 3921157, at *4 (M.D. Pa. July 20, 2016) ("[S]tate employment is generally sufficient to render the defendant a state actor . . . ." (citation omitted)).  Plaintiff asserts that Mayer-Regalbuto prepared and transmitted the report in her role as Plaintiff's teacher, using information that she claimed to have learned in that role.  Compl. ¶¶ 33, 46–49.  Thus, the challenged conduct occurred during and in connection with the performance of her official duties.  *See Cash v. Wetzel*, 8 F. Supp. 3d 644, 659 (E.D. Pa. 2014) ("Because plaintiff alleges that the acts complained of were committed by defendants . . . during the performance of

---

[2] In opposition, Plaintiff references Aufiero in defending this claim.  Opp. to Sch. at 11–15.  The Complaint, however, only asserts Count One against Mayer-Regalbuto.  Compl. ¶¶ 95–102.  Although Count Two includes allegations against Aufiero, it does not include a claim under section 1983.  *Id.* ¶¶ 103–113.  The Court therefore only addresses this claim as to Mayer-Regalbuto.

their duties as state corrections officers, plaintiff has sufficiently pled that defendants acted under color of state law."); *Price ex rel. O.P. v. Scranton Sch. Dist.*, No. 11-95, 2012 WL 37090, at *9 (M.D. Pa. Jan. 6, 2012) (finding that employees of a school district were acting under color of state law with respect to claims concerning their failure to prevent the harassment of a student at school). Moreover, given Mayer-Regalbuto's role as Plaintiff's teacher, the allegations suggest that her position "enabled [her] in [a] special way to report" the suspected child abuse. *P.K. by and through Koutzis v. Melleby*, No. 18-485, 2019 WL 4072114, at *7 (D.N.J. Aug. 28. 2019). Finally, although New Jersey law generally requires "[a]ny person" to report suspected child abuse, *see* N.J. Stat. Ann. § 9:6-8.10, the Complaint still plausibly indicates that she did so while "acting in [her] official capacity" as a School employee. *Reddick*, 2025 WL 84336, at *4 (citing *West*, 487 U.S. at 50). Accordingly, the allegations suffice to show that Mayer-Regalbuto acted under color of state law in filing the purportedly false report. The School Defendants' motion to dismiss this claim is therefore denied.

### ii. Count Two

In Count Two, Plaintiff asserts a claim under 42 U.S.C. §§ 1985 and 1986 against Mayer-Regalbuto and Aufiero for allegedly conspiring to submit a false child abuse report. Compl. ¶¶ 104–107.

### 1. Section 1985

To state a claim under section 1985(3), a plaintiff must allege

(1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.

*Kwasnik v. LeBlon*, 228 F. App'x 238, 244 (3d Cir. 2007). The School Defendants argue that Plaintiff has not adequately asserted either of the first two elements of this claim. Sch. Br. at 7–8.

Plaintiff has failed to plausibly show the existence of a conspiracy between Aufiero and Mayer-Regalbuto.  Civil rights conspiracies require a meeting of the minds.  *Shokirjoniy v. City of Clinton Twp.*, No. 18-8904, 2021 WL 1207721, at *3 (D.N.J. Mar. 31, 2021) (citation omitted).  To overcome a motion to dismiss, Plaintiff "must provide some factual basis to support the existence of the elements of a conspiracy, namely, agreement."  *Id.* (citation omitted); *see also Kennedy v. Borough of Frackville Pennsylvania*, No. 19-1476, 2020 WL 3498171, at *10 (M.D. Pa. June 29, 2020) (stating that a plaintiff must show some "facts from which a conspiratorial agreement can be inferred." (quoting *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010))).  But Plaintiff has not done so.  He provides only a conclusory assertion that Aufiero and Mayer-Regalbuto "conspired together" to submit a false child abuse report.  Compl. ¶ 104.  There are otherwise no facts provided that would suggest a conspiratorial agreement.  *See Delbridge v. Whitaker*, No. 09-4227, 2010 WL 1904456, at *8 (D.N.J. May 10, 2010).  Thus, Plaintiff has failed to allege the existence of a conspiracy.

Even assuming the existence of a conspiracy, Plaintiff has also failed to allege the requisite discriminatory animus.  In order to state a section 1985 claim, he must plausibly plead that Mayer-Regalbuto and Aufiero took a course of action because of its adverse effects upon an identifiable group.  *Davis v. Wigen*, 82 F.4th 204, 214 (3d Cir. 2023) (citing *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 272–73 (1993)).  The Complaint, however, contains no such allegations.  Plaintiff alleges that Mayer-Regalbuto "did not want Plaintiff in her classroom," told his parents that she was not qualified to teach him, and that Mayer-Regalbuto "became hostile" towards him.  Compl. ¶¶ 39–40, 44.  But Plaintiff does not "attribute any of the Defendants' actions to a discriminatory animus" held by Mayer-Regalbuto or Aufiero toward any particular class, which is fatal to his claim.  *Bell v. Sandy*, No. 11-2525, 2013 WL 4067960, at *5 (D.N.J. Aug. 12,

9

2013). Therefore, Plaintiff has failed to plead both the first and second elements of his section 1985(3) claim.

> ## 2. Section 1986

42 U.S.C. § 1986 provides a cause of action against those who fail to prevent a violation of section 1985. Because Plaintiff has not pled a viable section 1985 claim against Aufiero and Mayer-Regalbuto, his section 1986 claim also fails. *See Special Police Org. of N.J. v. City of Newark*, No. 19-8444, 2019 WL 4410066, *5 (D.N.J. Sept. 16, 2019) (citing *Whitehead v. Wetzel*, 720 F. App'x 657, 662 (3d Cir. 2017)). Accordingly, the School Defendants' motion to dismiss Count Two is granted.

> ### iii. Count Three

In Count Three, Plaintiff asserts a claim under 42 U.S.C. §§ 1983 and 1986 against the School for allegedly "direct[ing]" Aufiero and Elmera to use the ABA model due to financial incentives, which led them to remove Plaintiff from the ICB program. Compl. ¶¶ 30, 114–118.

> ## 1. Section 1983

To assert a claim under section 1983 against the School, Plaintiff must allege (1) the violation of a constitutionally-protected right and (2) that the violation resulted from a municipal policy, custom or practice. *Taylor v. Pennsylvania*, No. 17-3369, 2018 WL 6574187, at *7 (E.D. Pa. Dec. 12, 2018). The School Defendants move to dismiss this claim for failure to plausibly plead a policy, custom or practice. Sch. Br. at 9–11.

The Court agrees that Plaintiff has not done so. He only asserts, upon information and belief, that the School directed Aufiero and Elmera to prioritize the ABA model because of certain financial incentives. Compl. ¶ 30. But Plaintiff's allegations undercut this belief, as the ICB program continued to operate and there is no assertion that the program actually began to employ the ABA model. *See id.* ¶ 34. Thus, absent further factual support, the Court cannot credit

Plaintiff's allegation that prioritizing the ABA model constituted a "policy, custom or practice." *See Edwards v. Lindenwold Police Dep't*, No. 21-13076, 2022 WL 621064, at *7 (D.N.J. Mar. 3, 2022) ("It is well-established that conclusory allegations as to the existence of a policy or practice [are] insufficient to provide a valid basis for municipal liability."). Accordingly, the School Defendants' motion to dismiss the section 1983 claim in Count Three is granted.[3]

> 2.   *Section 1986*

Plaintiff's section 1986 claim against the School is likewise deficient. Again, a section 1986 claim requires an underlying violation of section 1985. *Special Police Org. of N.J.*, 2019 WL 4410066, at *5 (citation omitted). The Complaint suggests that Plaintiff asserts this claim against the School based on the alleged section 1985 violation by Mayer-Regalbuto and Aufiero in Count Two. Compl. ¶ 117. As discussed above, Plaintiff has failed to plausibly allege that section 1985 claim and thus has failed to state the section 1986 claim here. Accordingly, the School Defendants' motion to dismiss Count Three is granted.

> iv.   *Count Four*

In Count Four, Plaintiff asserts a claim under 42 U.S.C. §§ 1983 and 1986 and for breach of contract against the School, Aufiero, and Elmera based on his removal from the IBC program. Compl. ¶¶ 119–28.

> 1.   *Section 1983*

---

[3] Plaintiff contends in his opposition that he is also raising a claim for failure to train in Count Three. *See* Opp. to Sch. at 21–22. The Court cannot discern that such a theory is alleged by Plaintiff. *See* Compl. ¶¶ 114–118. And Plaintiff cannot amend his complaint in an opposition brief on a motion to dismiss. *Wilkins v. Navy Fed. Credit Union*, No. 22-2916, 2023 WL 239976, at *14 (D.N.J. Jan. 18, 2023). Accordingly, the Court will not consider a failure to train claim on this motion. *See Love v. Does*, No. 17-1036, 2019 WL 397001, at *4 n.5 (D.N.J. Jan. 31, 2019) (declining to "consider claims that were not alleged in the complaint"). Plaintiff may amend his Complaint to include this claim, as well as to address any other deficiencies identified herein, should he wish to do so.

A plaintiff cannot vindicate rights provided under IDEA[4] through section 1983.  *A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 802–03 (3d Cir. 2007).  Plaintiff seeks to do so here, as he complains that he was removed from a program in violation of an IEP, which is an IDEA-created right.  20 U.S.C. § 1412(a)(4); *see also S. v. W. Chester Area Sch. Dist.*, 353 F. Supp. 3d 369, 374 (E.D. Pa. 2019) ("An Individualized Education Program ('IEP') is 'the primary mechanism for delivering a [free appropriate public education under IDEA].'" (quoting *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 269 (3d Cir. 2012))).  Accordingly, the School Defendants' motion to dismiss the section 1983 claim in Count Four is granted.[5]

### 2.     Section 1986

As with the section 1986 claims discussed above, Plaintiff's section 1986 claim in Count Four is deficient for failure to plausibly allege an underlying section 1985 claim.  Therefore, the School Defendants' motion to dismiss the section 1986 claim in Count Four is granted.

### 3.     Breach of Contract

Finally, Plaintiff attempts to bring a breach of contract claim on the basis that "[t]he IEP constituted a binding contract between the School and the Plaintiff."  Compl. ¶ 122.  The School Defendants contend that this claim fails because an IEP is not a contract.  Sch. Br. at 12–13.

---

[4] In opposition, Plaintiff argues that this claim is actually "composed of several issues," including violations of the Americans with Disabilities Act ("ADA") and First Amendment retaliation.  Opp. to Sch. at 24.  These issues are not mentioned at all in the Complaint.  Again, a plaintiff cannot amend his complaint in an opposition brief on a motion to dismiss.  *Wilkins*, 2023 WL 239976, at *14.  As a result, the Court will not consider these unpled claims.  *See Love*, 2019 WL 397001, at *4 n.5.

[5] Plaintiff unpersuasively argues that *A.W.* has been abrogated by more recent Supreme Court decisions.  Opp. to Sch. at 24–25.  Both cases cited by Plaintiff concern the applicability of IDEA's administrative exhaustion requirements where a plaintiff asserts claims under a different rights-creating law such as the ADA.  *See Fry v. Napolean Cmty. Schs.*, 580 U.S. 154 (2017); *Luna Perez v. Sturgis Public Schools*, 598 U.S. 142 (2023).  Neither case, however, mentions section 1983 or implies that a plaintiff can enforce rights created under IDEA through section 1983.  *Fry* and *Luna Perez* therefore do not abrogate *A.W. See Luo v. Owen J. Roberts Sch. Dist.*, No. 14-6354, 2024 WL 4466613, at *4 (E.D. Pa. Oct. 10, 2024) ("A party cannot recover damages through Section 1983 on the basis of conduct that forms the basis of an IDEA claim." (citing *A.W.*, 486 F.3d at 803).

The Court agrees. An IEP is a "federal statutory creation." *Van Duyn ex rel. Van Duyn v. Baker School Dist. 5J*, 502 F.3d 811, 820 (9th Cir. 2007). This plan is "prepared by a child's 'IEP Team' (which includes teachers, school officials, and the child's parents)" and "must be drafted in compliance with a detailed set of procedures." *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 391 (2017) (citations omitted); *see also M.R.*, 680 F.3d at 269 (noting that an IEP includes "an assessment of the child's current educational performance, . . . articulate[s] measurable educational goals, and . . . specif[ies] the nature of the special services that the school will provide" (quoting *Schaffer v. Weast*, 546 U.S. 49, 53 (2005))); 20 U.S.C. § 1414(d)(1)(A)(i) (defining an IEP as a "written statement for each child with a disability that is developed, reviewed, and revised in accordance with this section"). This process does not fit with the traditional elements required for contract formation—offer, acceptance, and consideration. *Advanced Drainage Sys., Inc. v. SiteCo Materials, Inc.*, No. 13-1349, 2014 WL 1092809, at *4 (D.N.J. Mar. 18, 2014). As a result, "courts have rejected efforts to frame challenges to IEPs as breach-of-contract claims." *Van Duyn*, 502 F.3d at 820; *see also L.J. by N.N.J. v. Sch. Bd. of Broward Cnty.*, 927 F.3d 1203, 1212 (11th Cir. 2019) ("[A]n IEP is a plan, not a contract."). Thus, as Plaintiff has failed to plead the existence of a contract,[6] there can be no breach of contract claim. *Spicer v. Sodexo*, No. 19-12689, 2020 WL 5269872, at *5 (D.N.J. Sept. 4, 2020). Accordingly, the School Defendants' motion to dismiss the breach of contract claim in Count Four is granted.[7]

> v.    *Counts Seven and Eight*

---

[6] Contrary to Plaintiff's argument, *see* Opp. to Sch. at 26, the court in *C.H. ex rel. M.H. v. Jefferson Township Board of Education* did not hold that an IEP is a contract. No. 05-39, 2005 WL 4122172, at *1, *6 (D.N.J. Dec. 20, 2005) (finding that the plaintiff could enforce a separately negotiated settlement agreement that modified his IEP through a breach of contract suit).

[7] In opposition, Plaintiff argues that "whether the IEP is an actual contract is an immaterial contention." Opp. to Sch. at 27. Nevertheless, Plaintiff brought a claim for breach of contract, and the Court must analyze the claim as pled.

13

In Counts Seven and Eight, Plaintiff asserts defamation claims against Mayer-Regalbuto and Aufiero based on the statements contained in the purportedly false child abuse report.[8] Compl. ¶¶ 150–62.   Under New Jersey law, Plaintiff must allege "(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher." *Dashore v. Anderson*, No. 18-15554, 2019 WL 4727926, at *3 (D.N.J. Sept. 27, 2019) (citing *Ross v. Bd. of Educ.*, 658 F. App'x 97, 100 (3d Cir. 2016)).   Additionally, because Plaintiff does not assert a claim for defamation *per se*, he must plead special damages, which requires "harm of a material or pecuniary nature."   *Bartone v. NetJets, Inc.*, No. 11-8, 2011 WL 2532497, at *6 (D.N.J. June 24, 2011) (quoting *Ward v. Zelikovsky*, 643 A.2d 972, 984 (N.J. 1994)); *see also Moriarty v. Classic Auto Grp., Inc.*, No. 13-5222, 2014 WL 884761, at *4 (D.N.J. Mar. 6, 2014) (recognizing that statements are defamatory as a matter of law if they impute to another person "(1) a criminal offense; (2) a loathsome disease; (3) conduct, characteristics or a condition that is incompatible with his business, trade or office; or (4) serious sexual misconduct" (quoting *NuWave Inv. Corp. v. Hyman Beck & Co., Inc.*, 75 A.3d 1241, 1250 (N.J. Super. Ct. App. Div. 2013))).

The School Defendants argue that the statements in the report were not defamatory and that Plaintiff has failed to allege special damages.  *See* Sch. Br. at 15–18; Sch. Reply at 14–15. Plaintiff responds that the statements were defamatory and that he suffered "special harm" because DCPP subjected him to an invasive examination, disrupted his relationship with his father, and intruded into his medical records.  Opp. to Sch. at 28–30.

---

[8] The School Defendants contend that Count Eight should be dismissed as duplicative as to Mayer-Regalbuto because it "presents the same claim, based on the same facts, as Count Seven." Sch. Br. at 16 n.4.  Because the Court will grant the motion to dismiss both Count Seven and Count Eight for failure to state a claim, it need not dismiss the extra claim against Mayer-Regalbuto as duplicative.  The Court notes, however, that the claims in both counts appear to be identical as to Mayer-Regalbuto.

14

Plaintiff's defamation claims are deficient for two reasons.  First, the alleged statements contained in the purportedly false report are not capable of a defamatory meaning with respect to Plaintiff.[9]  "A defamatory statement is one that is (1) false and injures another person's reputation, or (2) subjects a person to hatred, contempt or ridicule, or (3) causes others to lose good will or confidence in that person."  *Castillo v. Viso*, No. 17-5255, 2024 WL 3594351, at *12 (D.N.J. July 31, 2024) (quoting *Morgan v. Maxwell*, No. A-3157-19, 2021 WL 1605989, at *8 (N.J. Super. Ct. App. Div. Apr. 26, 2021)).  In other words, a defamatory statement "is one that . . . deter[s] others from wanting to associate or deal with [the subject of the statement]."  *Read v. Profeta*, 397 F. Supp. 3d 597, 650–51 (D.N.J 2019) (alterations in original) (quoting *G.D. v. Kenny*, 15 A.3d 300, 310 (N.J. 2011)).  In determining whether a statement is defamatory, the Court evaluates the statement "according to the fair and natural meaning which it would be given by persons of ordinary intelligence."  *Id.* at 651 (citation omitted).

The asserted statements, which suggested that Plaintiff was a victim of child abuse, were not defamatory.  Rather than "deter[ring] others from wanting to associate or deal with" Plaintiff, *see Read*, 397 F. Supp. 3d at 650–51, these statements were likely to elicit sympathy towards

---

[9] In a separate lawsuit, Plaintiff's father also brought a claim for defamation based on the same statements against the School, the DCPP Defendants, and the New Milford Police Department.  *See Y.W. v. New Milford Pub. Sch.*, No. A-5978-12T4, 2014 WL 4636380 (N.J. Super. Ct. App. Div. Sept. 18, 2014).  There, the Appellate Division affirmed the trial court's dismissal of the father's claim for failure to file a timely notice of claim under the New Jersey Tort Claims Act.  *Id.* at *2.  The Appellate Division noted that the claim "sound[ed] in defamation" and described the elements needed to prove that claim.  *Id.*  Plaintiff argues in opposition that the School Defendants "are bound by the law of the case and judicial estoppel that the report made by Mayer and Aufiero 'sounds in defamation.'"  Opp. to Sch. at 28.

First, the "law of the case doctrine 'prevents reconsideration of legal issues already decided in earlier stages of a case,'" and "only applies within the same case."  *Home Depot USA, Inc. v. Lafarge N. Am., Inc.*, 59 F.4th 55, 61 (3d Cir. 2023) (citations omitted).  *Y.W.* is not the same case, so this doctrine does not apply.  Second, to the extent that Plaintiff is arguing that the School Defendants should now be collaterally estopped from challenging the sufficiency of Plaintiff's defamation claim based on *Y.W.*, such an argument would fail.  The court in *Y.W.* never analyzed whether the father had sufficiently alleged a defamation claim.  2014 WL 4636380, at *2.  Thus, the issue of whether Plaintiff's father even stated a claim for defamation was never "actually litigated" and the court never decided the issue.  Collateral estoppel therefore cannot apply here.  *See Mitchell v. Vincente*, No. 12-3394, 2014 WL 1092760, at *5–6 (D.N.J. Mar. 18, 2014) (citation omitted) (describing the requirements for collateral estoppel under New Jersey law).

Plaintiff. *See Sarwer v. Conde Nast Publ'ns, Inc.*, 237 A.D.2d 191, 191 (N.Y. App. Div. 1997) (finding statements that falsely asserted that an individual was a victim of child abuse were "not susceptible of a defamatory connotation . . . , the effect of the article as a whole being to leave the reader with only sympathy for plaintiff as a victim of child abuse"); *Bement v. N.Y.P. Holdings Inc.*, No. 109793/99, 2002 WL 31934112, at *2 (N.Y. Sup. Ct. June 12, 2002) (finding that statements that the plaintiff was sexually assaulted "should hardly lead a reasonable reader to form an unfavorable opinion about her"); *cf. McDonough v. Bidwill*, No. 24-764, 2025 WL 487171, at *14 (D. Ariz. Feb. 13, 2025) ("Courts across the country have held that identifying a person as the victim of a . . . crime is not defamatory.") (collecting cases). Moreover, the statements were transmitted in a suspected child abuse report to the DCPP, an agency charged with "ensur[ing] the safety . . . of children." *Cruz v. New Jersey*, No. 16-703, 2022 WL 3681243, at *1 (D.N.J. Aug. 25, 2022). It is implausible that the employees of DCPP or the police assisting them in an investigation would, as a result of reading or hearing statements in a suspected child abuse report, view that child with "hatred, contempt or ridicule." *See Read*, 397 F. Supp. 3d at 651 ("[A] statement's meaning can be affected by its context." (citation omitted)). Therefore, the alleged statements in the purportedly false report were not defamatory in the pled context.

Second, even assuming that the statements were defamatory, Plaintiff has failed to allege special damages. *See Bartone*, 2011 WL 2532497, at *6. Special damages require "harm of a material or pecuniary nature." *Dashore*, 2019 WL 4727926, at *3 (citation omitted). Thus, Plaintiff must allege some sort of economic harm as a result of these statements. *See Pecuniary*, Black's Law Dictionary (12th ed. 2024) ("Of, relating to, or involving money; monetary"). Plaintiff, however, has not done so. Instead, he argues that he suffered a "special harm" based on DCPP's invasive examination, interference with his relationship with his father, and review of his

16

private medical records. Opp. to Sch. at 29. Although these may be harms, they are not "harm[s] of a material or pecuniary nature." *See Marino v. Westfield Bd. of Educ.*, No. 16-361, 2017 WL 216691, at *6–7 (D.N.J. Jan. 18, 2017) (finding that the plaintiff pled special damages where he alleged that he lost his job because of the asserted defamatory statements); *Dashore*, 2019 WL 4727926, at *4 (finding that the plaintiff, a clinician, pled special damages where she alleged that the defamatory statements caused her to lose approximately fifty patients). Therefore, he has failed to allege special damages and Defendants' motion to dismiss Counts Seven and Eight is granted.[10]

### B.    Claims Against the DCPP Defendants

Plaintiff asserts two claims against the DCPP Defendants under 42 U.S.C. §§ 1983, 1985, and 1986 relating to the child abuse investigation. Compl. ¶¶ 129–49. For the reasons discussed below, the Court grants the DCPP Defendants' motion to dismiss both claims.

### i.    Section 1983 Claims

Plaintiff asserts two substantive due process violations under section 1983. First, he alleges that Roberts and Zeron violated his right to associate with his family by imposing a safety plan that restricted his access to his father. Compl. ¶¶ 129–40. Second, Plaintiff contends that Roberts, Zeron, and Lennon violated his right to bodily integrity by conducting his abuse examination. *Id.* ¶¶ 141–49. A plaintiff alleging a violation of substantive due process rights must plausibly plead (1) that the interest at issue is a protected substantive due process right and (2) that the government's deprivation of that protected interest "shocks the conscience." *Lowe v. Lancaster Cnty. Child. & Youth Soc. Servs.*, No. 20-1413, 2020 WL 7223416, at *3 (E.D. Pa. Dec. 8, 2020).

---

[10] Plaintiff appears to argue that he has stated a claim for false light invasion of privacy. Opp. to Sch. at 30. This tort is not mentioned in the Complaint. Again, a plaintiff cannot amend his complaint in an opposition brief on a motion to dismiss. *Wilkins*, 2023 WL 239976, at *14. As a result, the Court will not consider this unpled claim. *See Love*, 2019 WL 397001, at *4 n.5.

17

The DCPP Defendants move to dismiss the claims because Plaintiff has failed to assert any "conscience-shocking" conduct.[11]  DCPP Br. at 13–18.  To "shock the conscience," the DCPP Defendants' actions "must [have] exceed[ed] both negligence and deliberate indifference, and reach[ed] a level of gross negligence or arbitrariness." *Lowe*, 2020 WL 7223416, at *3 (quoting *Miller v. City of Phila.*, 174 F.3d 368, 375–76 (3d Cir. 1999)).  As here, where a case is brought against a child welfare agency or its employees, this standard is only met where the defendants lacked any "reasonable and articulable evidence giving rise to a reasonable suspicion that [the minor had] been abused or [was] in imminent danger of abuse." *Id.* (alteration in original) (quoting *A.J. v. Lancaster Cnty.*, 826 F. App'x 248, 250 (3d Cir. 2020)).

### 1.    Safety Plan

Plaintiff has failed to plead any conscience-shocking conduct with respect to the conditions imposed in the safety plan.  DCPP received a report from Plaintiff's teacher that suggested that sexual abuse may have been occurring in his home.  *See* Compl. ¶¶ 46–49.  Although Roberts was unable to immediately verify the allegations, *id.* ¶¶ 53–59, it does not plausibly follow that Roberts would definitively conclude that no abuse was occurring from Plaintiff's initial denial.  *See Herbig*

---

[11] Defendants also argue that they are entitled to qualified immunity.  DCPP Br. at 7–13.  In response, Plaintiff cross-moves for a declaratory judgment that qualified immunity is unconstitutional.  *See generally* Opp. to DCPP.  Because the Court finds that Plaintiff has failed to plausibly allege any "conscience-shocking" conduct, it does not reach the parties' arguments concerning qualified immunity and will deny Plaintiff's cross motion as moot.  *See Decaro v. Newark Pub. Sch.*, No. 15-5540, 2016 WL 3545075, at *4 n.5 (D.N.J. June 28, 2016) (denying as moot the plaintiff's motion for a declaratory judgment because the court granted the defendants' motion to dismiss); *Tafaro v. Miller*, No. 11-4231, 2011 WL 6097767, *3 n.4 (D.N.J. Dec. 6, 2011) (same).

The Court notes, however, that under the doctrine of vertical stare decisis, a district court lacks the authority to "overturn or undercut" an established doctrine like qualified immunity.  *Alexander v. Eaton*, No. 22-5066, 2025 WL 242481, at *4 n.1 (E.D. Pa. Jan. 17, 2025).  Moreover, the Supreme Court has interpreted section 1983 to permit qualified immunity, *Mack v. Yost*, 63 F.4th 211, 222–23 (3d Cir. 2023), and stare decisis "carries enhanced force" where the Court's "decision[s] . . . interpret[] a statute." *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 456 (2015).  As the Third Circuit has recognized, although the merits of "qualified immunity have generated debate in recent years," whether to alter the scope of the doctrine "lies with Congress, as wielder of the statute-drafting pen, and with the Supreme Court, as chief interpreter of Congress's handiwork." *Mack*, 63 F.4th at 226.

18

*v. Kretzer*, No. 13-1692, 2013 WL 12090675, at \*5 (M.D. Fla. Sept. 13, 2013) ("A child's 'initial denial that any abuse occurred is not unusual . . . .'" (quoting *Lowe v. Aldridge*, 958 F.2d 1565, 1571 (11th Cir. 1992)); *Jimenez v. Bogle*, No. 24-323, 2025 WL 883211, at \*2 (2d Cir. Mar. 21, 2025) ("[A] sexually abused child frequently will refuse at first to admit the fact of sexual molestation." (citation omitted)); *Osborne v. Georgiades*, 679 F. App'x 234, 241 (4th Cir. 2017) (Traxler, J., dissenting) ("A child's reluctance to talk about sexual abuse happens all the time. But such initial denials do not mean the abuse did not occur . . . ."). As alleged in the Complaint, the DCPP Defendants otherwise had no reason to believe that Mayer-Regalbuto's report misrepresented Plaintiff's statements at that time. *See Lowe*, 2020 WL 7223416, at \*6 (noting that the allegations lacked any indication that the defendants had reason to suspect that the child abuse report was inaccurate). Indeed, DCPP was not relying on the "unknown credibility" of a "six-fold hearsay report by an anonymous informant." *Id.* (quoting *Croft v. Westmoreland Cnty. Child. & Youth Servs.*, 103 F.3d 1123, 1126–27 (3d Cir. 1997)). Instead, the report came from an identifiable source close to Plaintiff—his teacher. Thus, the Complaint indicates that the DCPP Defendants did not "lack[] 'reasonable and articulable evidence giving rise to a reasonable suspicion that [Plaintiff had] been abused or [was] in imminent danger of abuse'" when they imposed the safety plan. *A.J.*, 826 F. App'x at 250 (second alteration in original) (quoting *Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 241 (3d Cir. 2013)).

Moreover, the safety plan only imposed temporary restrictions on Y.Y.'s ability to be alone with his father. *See Croft*, 103 F.3d at 1126 (noting that the "degree of interference" in the familial relationship is significant to this analysis). Courts have found that even temporary removal of a child from a parent's custody does not shock the conscience where some reasonable suspicion of abuse exists. *See Lowe*, 2020 WL 7223416, at \*6 (dismissing a substantive due process claim

19

where a child was removed from his parent's custody); *A.J.*, 826 F. App'x 249–50 (same); *Abrantes v. Smith*, No. 23-1324, 2024 WL 3969685, at *7 (M.D. Pa. Aug. 28, 2024) (dismissing a substantive due process claim where a child was removed from home after a teacher reported that the child had a bruise on her arm). Given that the allegations in the Complaint suggest that DCPP had some evidence indicating that Plaintiff was being abused, DCPP's more limited restriction here does not shock the conscience. *See Craven v. Leach*, No. 14-1860, 2015 WL 12698442, at *6 (D.N.J. Oct. 1, 2015) (dismissing a substantive due process claim where the plaintiff was allegedly unable to be alone with his child during a one-month investigation). That the DCPP ultimately concluded that no abuse had occurred does not alter this conclusion. *See Lowe*, 2020 WL 7223416, at *6; *A.J.*, 826 F. App'x at 250 (analyzing whether conduct shocked the conscience based on the information available "at the time of the challenged action"). Accordingly, Plaintiff has failed to state a substantive due process claim based upon the safety plan imposed by DCPP.

### 2.    *Abuse Examination*

Plaintiff's due process claim concerning his abuse examination suffers from the same deficiency. Again, although Roberts was initially unable to verify the report in her conversation with Plaintiff, Plaintiff's teacher, Mayer-Regalbuto, indicated that Plaintiff had complained that his "'bottom' was bothering him" and that he had been touching his father in "secret." Compl. ¶¶ 46–49; *see also, e.g.*, *Herbig*, 2013 WL 12090675, at *5 ("A child's 'initial denial that any abuse occurred is not unusual . . . .'" (quoting *Lowe*, 958 F.2d at 1571)). In circumstances where there is an allegation that a child may have suffered physical abuse, New Jersey regulations often require DCPP officials to obtain a medical evaluation of that child. *See* N.J. Admin. Code § 3A:10-2.3. This includes seeking a "medical opinion which states whether . . . the most likely manner in which the injury or condition occurred was abuse." *Id.* § 3A:10-2.3(b)(1). Thus, whether the allegations of abuse were ultimately determined to be unfounded, it was not plausibly "ill-conceived or

20

malicious" for the DCPP employees to order a medical examination based on what they knew at the time. *Lowe*, 2020 WL 7223416, at *6. Rather than plausibly suggesting "conscience-shocking" conduct by Roberts, Zeron, and Lennon, their actions appear consistent with their statutory obligation to make "the child's health and safety [the] paramount concern." N.J. Stat. Ann. § 9:6-8.8(b)(1). Accordingly, Plaintiff has failed to state a substantive due process claim based on his abuse examination and the DCPP Defendants' motion to dismiss the section 1983 claims in Counts Five and Six is granted.

### ii. Section 1985 Claims

Again, civil rights conspiracies brought under section 1985 require a meeting of the minds. *Shokirjoniy*, 2021 WL 1207721, at *3 (citation omitted). But Plaintiff has failed to allege any "factual basis to support the existence of the elements of a conspiracy." *Id.* (quoting *Voth*, 2016 WL 7535374, at *9). Instead, the Complaint contains only conclusory assertions that Roberts and Zeron (in Count Five) or Roberts, Zeron, and Lennon (in Count Six) conspired to deprive Plaintiff of various rights. *See* Compl. ¶¶ 133, 148. Therefore, the DCPP Defendants' motion to dismiss the section 1985 claims in Counts Five and Six is granted.[12]

### iii. Section 1986 Claim

Absent a viable section 1985 claim, Plaintiff cannot sustain a section 1986 claim. *Special Police Org. of N.J.*, 2019 WL 4410066, at *5 (citation omitted). As Plaintiff has failed to state a section 1985 claim against the DCPP Defendants, the DCPP Defendants' motion to dismiss the section 1986 claim is granted.

## IV. **CONCLUSION**

Accordingly, for the reasons stated above, **IT IS** on this 28th day of April, 2026;

---

[12] There are also no factual assertions of class-based discriminatory animus by the DCPP Defendants to sustain this claim. *See Bell*, 2013 WL 4067960, at *5.

**ORDERED** that the School Defendants' motion to dismiss (ECF No. 23) is **GRANTED IN PART** and **DENIED IN PART**; and it is further

**ORDERED** that Count One against Mayer-Regalbuto may proceed; and it is further

**ORDERED** that Counts Two, Three, Four, Seven, and Eight against the School Defendants are **DISMISSED WITHOUT PREJUDICE**; and it is further

**ORDERED** that the DCPP Defendants' motion to dismiss (ECF No. 35) is **GRANTED**; and it is further

**ORDERED** that Counts Five and Six against the DCPP Defendants are **DISMISSED WITHOUT PREJUDICE**; and it is further

**ORDERED** that Plaintiff's cross motion for a declaratory judgment (ECF No. 64) is **DENIED AS MOOT**; and it is further

**ORDERED** that Plaintiff shall have thirty (30) days from entry of this Opinion and Order to submit an amended complaint that addresses the deficiencies identified in this Opinion and Order. Insofar as Plaintiff submits a further amended complaint, he shall also provide a form of the amended complaint that indicates in what respect it differs from the current complaint, by bracketing or striking through materials to be deleted and underlining materials to be added. *See* L. Civ. R. 15(a)(2).

      **SO ORDERED.**

*s/ Claire C. Cecchi*
      **CLAIRE C. CECCHI, U.S.D.J.**